# PENNSYLVANIA RAILROAD COMPANY *v.* PURITAN COAL MINING COMPANY.

## ERROR TO THE SUPREME COURT OF THE STATE OF PENNSYLVANIA.

### No. 76.    Argued November 11, 1914.—Decided April 5, 1915.

Section 8 of the Act to Regulate Commerce gives the shipper a right of action against the carrier for damages occasioned by his doing an act prohibited by the statute, and § 9 gives the shipper the option to proceed either before the Interstate Commerce Commission or in the Federal courts.

Construing §§ 8 and 22, however, in connection with the statute as a whole, the Act to Regulate Commerce is both declaratory and creative, and while shippers are given new rights, existing causes of action are preserved and the jurisdiction of state courts is not superseded, in cases in which the decision does not involve the determination of matters calling for the exercise of administrative power and discretion of the Commission or relate to subjects over which exclusive jurisdiction is given to the Federal courts.

While the Federal courts may have exclusive jurisdiction of a suit brought to declare that a rule of practice promulgated by the carrier is unfair, a suit for damages occasioned by the violation or discriminatory enforcement of the carrier's rule, fair on its face and not attacked as unfair, does not involve administrative questions but only those of fact; and even though for damages arising in interstate commerce, such a suit is not within the exclusive jurisdiction of the Federal courts, but may be prosecuted either in those courts or in the state courts.

The state courts have jurisdiction of an action of the shipper against the carrier to furnish a reasonable number of cars, whether the action be treated as one for breach of the common law duty to furnish the cars or for unjust discrimination in allotting cars to another shipper in violation of the carrier's own rule to furnish all the shippers on an equal *pro rata* basis. The jurisdiction of the state court is not defeated because the breach of common law duty is also an unjust discrimination.

Motive for breach of common law duty of the carrier to furnish a reasonable number of cars is immaterial, and what was a proper supply under the circumstances is a matter of fact.

While, ordinarily, a shipper on reasonable demand is entitled to all the cars it can promptly load, that right is not absolute, and a carrier is not liable for failure to supply cars as the result of sudden and great demands which it had no reason to apprehend, but in a case of car shortage it is bound to treat shippers fairly if not identically.

Where there is a shortage and the shipper complains that the carrier's rule of distribution is unfair, the question is for the Commission, *Morrisdale Coal Co.* v. *Penna. R. R.*, 230 U. S. 312, but where the shipper does not attack the rule itself but complains that the carrier refused to furnish the number of cars it was entitled to under the rule, while other shippers were furnished more cars than they were entitled to under the same rule, a preliminary finding of the Commission is unnecessary; and even if the shipments were interstate the state and Federal courts have jurisdiction.

An exception is properly disallowed by the state appellate court, and will be disregarded by this court, if no relevant testimony was offered to support it and no point thereon raised in the trial court.

237 Pa. St. 420, affirmed.

In March 1908, the Puritan Coal Mining Company brought suit in the Court of Common Pleas of Clearfield County, Pennsylvania, against the Pennsylvania Railroad Company for damages caused by the latter's failure to furnish cars needed for the transportation of coal. On November 21, 1908, the plaintiff filed a "Statement of Claim" in which it was alleged that the defendant was a common carrier of freight between points within the State of Pennsylvania and as such bound to furnish shippers with adequate facilities for the transportation of coal, but that the carrier did not, as required by law, furnish the plaintiff with sufficient cars to enable it to transport coal mined by it. By reason of such failure to perform its duty and legal obligation, the defendant caused the plaintiff damage to the extent of $260,777.

Other paragraphs in the Statement alleged that the carrier established and published the capacity of all coal mines in the region reached by its railway; that, as a common carrier, it was bound to furnish cars upon the

basis of equality in proportion to the rated capacity of plaintiff's mines. But, disregarding its duty, under the statute of the State, the defendant did, unreasonably as well as unlawfully, refuse to furnish the plaintiff with its pro rata share of coal cars held for daily distribution and did subject the plaintiff to unreasonable disadvantage in that it favored and did unduly and unreasonably discriminate in favor of the Berwind-White Coal Company by giving to the latter 500 cars before distributing any to the plaintiff. By reason of the undue and unjust discrimination against the plaintiff and the undue preference in favor of the Berwind-White Company the plaintiff was not furnished with the cars to which it was entitled and thereby lost the profit of $260,777 which it could and would have made on coal, which it could and would have shipped had it received its due proportion of cars.

On November 23, 1908 and again in April 1911, other Statements were filed which repeated and amplified the charge of unjust discrimination in the distribution of cars whereby the plaintiff received less and the Berwind-White Company more than was proper under the rule of allotment, established by the carrier.

The defendant moved to dismiss the case because the state court was without jurisdiction. The court held that the motion was bad as a demurrer; bad as a plea in abatement, and dismissed it as having been prematurely made. The defendant filed no other defense except a plea of the Statute of Limitations as to certain items of damage claimed in an amendment to the original Statement.

By consent the case was heard by the judge without a jury. He made a report of the facts from which it appears that: Ordinarily the carrier was able to furnish shippers with cars on demand; but in 1902 there was a strike in the Anthracite Region which cut off the usual supply of anthracite coal to eastern cities and compelled them to use bituminous coal mined along the lines of the Pennsyl-

vania Railway. The new demand for soft coal was so great that the Railroad Company was not able·to supply the full number of cars called for by the mining companies on its line. Its established rule in such cases was that cars should be allotted to the several coal Districts in proportion to their output, the cars thus allotted to the Districts being then distributed to the mining companies therein in proportion to their capacity. During the Anthracite Coal Strike, however, the carrier violated this rule and made excessive allotments to the "Scalp Level Region," in which the Berwind mines were located, and made too small an allotment to the "Mountain Region" in which the Puritan mines were situated.

There was evidence that the Puritan Company had orders for coal at a price which would have netted it a large profit. The coal so ordered was to be delivered "Free On Board" the cars at the Puritan mines—the purchaser and consignee paying the freight to points of destination within and without the State. There was evidence that the Puritan Company was ready, willing and able to make such sales and deliveries and constantly demanded cars in order to enable it to fill these orders. Sometimes the carrier for days would fail to furnish cars, with the result that the company's mining operations were seriously interrupted. Sometimes the Puritan got cars but not the full number to which it was entitled on the basis of distribution according to mine capacity, although the Berwind-White Company during the same period received more than its proportion.

The Railroad Company's elaborate and detailed Distribution Sheets were introduced in evidence. They showed the number of cars to be allotted to mines on the basis of capacity for each day of the period during which the car shortage existed. From these Sheets and the other evidence in the case it appeared that the Berwind Company received many more cars than its share and that the

Puritan received several thousand less than its proportion. There was proof as to the number of tons these cars could have hauled; that the Puritan had orders for coal which it would have sold if these cars had been furnished; there was also evidence as to the royalty and cost of production, with data on which to make calculation of the damage resulting from the failure to receive cars.

The trial judge held that the state court had jurisdiction and entered a judgment for the plaintiff, which with interest amounted to $74,323.88. Exceptions to the report were overruled and the case was taken to the Supreme Court of Pennsylvania on assignments in which complaint was made that the trial judge erred—

"(1) in holding that the state court had jurisdiction;

(2) in failing to hold that, under the Commerce Act, the Federal court alone had jurisdiction;

(3) in holding that the business between the Puritan Company and the Railroad was intrastate business where coal was sold F. O. B. the cars at the mines;

(4) in holding that the plaintiff could recover damages for failure to receive cars intended for use in shipping coal outside the State;

(5) in adopting the method for distributing cars on which the damages were collected;

(6) in failing "to take into account the private or individual cars, so-called, which were delivered to the plaintiff during the period of the action in determining the number which it would have been entitled to receive of the additional cars which the court has found should have been allotted to the region or district in which the plaintiff's mines were located."

*Mr. Francis I. Gowen,* with whom *Mr. Frederic D. McKenney* and *Mr. John G. Johnson* were on the brief, for plaintiff in error:

The Interstate Commerce Act alone is applicable.

Actions for breach of the Interstate Commerce Act are not maintainable in state courts.

Cars while being loaded preparatory to interstate movement are employed in interstate commerce.

If the action is maintainable as to intrastate cars, unjust discrimination in distribution of such must be shown to justify recovery.

In determining the number of cars the shipper is entitled to, his individual or private cars must be counted. *Balt. & Ohio R. R. Co.* v. *Pitcairn Coal Co.*, 215 U. S. 481; *Adams Exp. Co.* v. *New York*, 232 U. S. 14; *Chicago &c. Railway Co.* v. *Hardwick Elevator Co.*, 226 U. S. 426; *Clark Brothers* v. *Penna. R. R.*, 241 Pa. St. 515; *Hillsdale Coal Co.* v. *Penna. R. R.*, 19 I. C. C. 356; *Int. Comm. Comm.* v. *Ill. Cent. R. R.*, 215 U. S. 452; *Loomis* v. *Lehigh Valley R. R.*, 208 N. Y. 312; *Minnesota Rate Cases*, 230 U. S. 352; *Mo. Pac. Ry.* v. *Larabee Mills*, 211 U. S. 612; *Morrisdale Coal Co.* v. *Penna. R. R.*, 230 U. S. 304; *North Carolina R. R.* v. *Zachary*, 231 U. S. 305; *Nor. Pac. Ry.* v. *Pacific Coast Ass'n*, 165 Fed. Rep. 1; *Nor. Pac. Ry.* v. *Washington*, 222 U. S. 370; *Ohio* v. *Worthington*, 225 U. S. 101; *Pennsylvania R. R.* v. *Int. Comm. Comm.*, 193 Fed. Rep. 81; *Savage* v. *Jones*, 225 U. S. 501; *Sheldon* v. *Wabash Ry.*, 105 Fed. Rep. 785; *Southern Ry.* v. *Reid*, 222 U. S. 424; *Stineman Mining Co.* v. *Pennsylvania R. R.*, 241 Pa. St. 509; *Tex. & Pac. Ry.* v. *Sabine Tram Co.*, 227 U. S. 111; *Thompson* v. *Pennsylvania R. R.*, 10 I. C. C. 640; *Van Patten* v. *Chi., Mil. & St. P. Ry.*, 74 Fed. Rep. 981; *Yazoo & Miss. Valley R. R.* v. *Greenwood Grocery Co.*, 227 U. S. 1.

*Mr. A. M. Liveright* and *Mr. A. L. Cole* for defendant in error.

MR. JUSTICE LAMAR, after making the foregoing statement, delivered the opinion of the court.

The Pennsylvania Railroad Company, an interstate carrier, was sued in a state court for damages caused by its

failure to furnish the Puritan Company with cars in which to load coal for shipment to points within and without the State. The pleadings alleged not only that the carrier had failed to perform its duty to furnish cars, but that in violation of a state statute it had unjustly discriminated against the Puritan Company by failing to distribute cars in accordance with the carrier's own rule that, in time of shortage, they should be allotted to the coal companies on the basis of mine capacity.

The trial court held that the plaintiff was entitled to recover damages caused by the unjust discrimination in distribution of cars. The Supreme Court of Pennsylvania did likewise and affirmed the judgment in favor of the plaintiff. 237 Pa. St. 420.

The Railway Company then brought the case here insisting in effect that (1) the determination of the proper basis for the distribution of cars was a matter calling for the exercise of the power of the Interstate Commerce Commission; (2) that no court had jurisdiction of a suit against it for discriminatory allotment until after the Commission had determined that its rule for distribution was improper; and (3) that no suit for damages against an interstate carrier could be brought for damages occasioned by a failure to deliver cars or for an unjust discrimination in distribution, except in a United States court.

1. These contentions involve a consideration of the jurisdiction of the Commission, of the state courts, and of the Federal courts. But fortunately it will not be necessary to enter into an elaborate discussion of each of the questions.

Section 3 [1] of the Commerce Act makes it unlawful for

---

[1] "Sec. 3. It shall be unlawful for any common carrier subject to the provisions of this act to make or give any undue or unreasonable preference or advantage to any particular person, company, firm, corporation, or locality, or any particular description of traffic, in any respect whatsoever, or to subject any particular person, company, firm, cor-

the carrier to unduly prefer one shipper over another. Section 8 [1] gives a right of action against the carrier for damages occasioned by his doing an act prohibited by the statute, and § 9 provides:

"That any person or persons claiming to be damaged by any common carrier subject to the provisions of this act may either make complaint to the Commission as hereinafter provided for, or may bring suit in his or their own behalf for the recovery of the damages for which such common carrier may be liable under the provisions of this act, in any district or circuit court of the United States of competent jurisdiction; but such person or persons shall not have the right to pursue both of said remedies, and must in each case elect which one of the two methods of procedure herein provided for he or they will adopt." . . .

It will be seen that this section does more than create a right and designate the court in which it is to be enforced. It gives the shipper the option to proceed before the Commission or in the Federal courts. The express grant of the right of choice between those two remedies was the exclusion of any other remedy in a state court; and that the Federal tribunals have exclusive jurisdiction of a certain class of cases referred to in § 9 has been recog-

---

poration, or locality, or any particular description of traffic, to any undue or unreasonable prejudice or disadvantage in any respect whatsoever."

[1] "Sec. 8. That in case any common carrier subject to the provisions of this act shall do, cause to be done, or permit to be done any act, matter, or thing in this act prohibited or declared to be unlawful, or shall omit to do any act, matter, or thing in this act required to be done, such common carrier shall be liable to the person or persons injured thereby for the full amount of damages sustained in consequence of any such violation of the provisions of this act, together with a reasonable counsel or attorney's fee, to be fixed by the court in every case of recovery, which attorney's fee shall be taxed and collected as part of the costs in the case."

nized in the few decisions dealing with the question. See *Copp* v. *Railroad Co.*, 43 La. Ann. 511; *Carlisle* v. *Missouri Pacific*, 168 Missouri, 656; *Western &c. R. R.* v. *White*, 82 S. E. Rep. 644; *Gulf, C. & S. F. Ry.* v. *Moore,* 98 Texas, 302; *Puritan* v. *Pennsylvania Co.*, 237 Pa. St. 448.    In *Mitchell Company* v. *Pennsylvania Railroad*, 230 U. S. 250, the same view of the statute was taken in discussing another, but related, question.    This construction is also supported by the legislative history of the statute.    For while the Hepburn Act, as a convenience to shippers, permitted suits on Reparation Orders to be brought in the Federal court of the District where the plaintiff resided or the Company had its principal office; and while the act of 1910 (36 Stat. 554) in further aid of shippers, permitted suits on Reparation Orders to be brought in state or Federal courts, it made no change in §§ 8 and 9 which, as shown above, gave the shipper the option to make complaints to the Commission or to bring suit in a United States court.

2. But §§ 8 and 9 standing alone might have been construed to give the Federal courts exclusive jurisdiction of all suits for damages occasioned by the carrier violating any of the old duties which were preserved and the new obligations which were imposed by the Commerce Act.    And, evidently, for the purpose of preventing such a result, the Proviso to § 22 declared that "nothing in this act contained shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this act are in addition to such remedies."

That proviso was added at the end of the statute,— not to nullify other parts of the Act, or to defeat rights or remedies given by preceding sections,—but to preserve all existing rights which were not inconsistent with those created by the statute.    It was also intended to preserve existing remedies, such as those by which a shipper could, in a state court, recover for damages to

property while in the hands of the interstate carrier; damages caused by delay in shipment; damages caused by failure to comply with its common law duties and the like. But for this proviso to § 22 it might have been claimed that, Congress having entered the field, the whole subject of liability of carrier to shippers in interstate commerce had been withdrawn from the jurisdiction of the state courts and this clause was added to indicate that the Commerce Act, in giving rights of action in Federal courts, was not intended to deprive the state courts of their general and concurrent jurisdiction. *Galveston &c. R. R.* v. *Wallace,* 223 U. S. 481.

Construing, therefore, §§ 8, 9 and 22 in connection with the statute as a whole, it appears that the Act was both declaratory and creative. It gave shippers new rights, while at the same time preserving existing causes of action. It did not supersede the jurisdiction of state courts in any case, new or old, where the decision did not involve the determination of matters calling for the exercise of the administrative power and discretion of the Commission; or relate to a subject as to which the jurisdiction of the Federal courts had otherwise been made exclusive. Compare *Abilene Case,* 204 U. S. 439, 446; *Robinson* v. *Balt. & Ohio,* 222 U. S. 506; 36 Stat. 551 (15); 38 Stat. 220.

In the light of these conclusions, and bearing in mind that the damages sued for here are found to have been inflicted during the anthracite strike of 1902 (before the passage of the Hepburn Act of 1906) it becomes necessary to determine whether the plaintiff's suit was based on a right of action as against an interstate carrier of which the state court had jurisdiction.

3. The difficulty in answering the question grows out of the double character of the pleadings and the construction given the facts by the state court.

The "Statement" contains four counts—one on the common law liability for failure to furnish cars, and the

other three for damages occasioned by unjust discrimination. The plaintiff seems to have ignored his common law cause of action and the trial court entered a judgment for plaintiff for damages as for unjust discrimination. The Supreme Court of Pennsylvania affirmed the judgment, but said that 'if the case was with the plaintiff on its facts, and it is so found there was an offense three-fold in character: (1) the offense against the common law, (2) an offense against the Pennsylvania statute of June 3, 1883, making undue and unreasonable discrimination unlawful, (3) an offense against § 3 of the Federal statute regulating interstate commerce.'

There are several decisions, already cited, which hold that suits against Railroads for unjust discrimination in interstate commerce can only be brought in the Federal courts. But it must be borne in mind that there are two forms of discrimination—one in the rule and the other in the manner of its enforcement; one in promulgating a discriminatory rule, the other in the unfair enforcement of a reasonable rule. In a suit where the rule of practice itself is attacked as unfair or discriminatory, a question is raised which calls for the exercise of the judgment and discretion of the administrative power which has been vested by Congress in the Commission. It is for that body to say whether such a rule unjustly discriminates against one class of shippers in favor of another. Until that body has declared the practice to be discriminatory and unjust no court has jurisdiction of a suit against an interstate carrier for damages occasioned by its enforcement. When the Commission has declared the rule to be unjust, redress must be sought before the Commission or in the United States courts of competent jurisdiction as provided in § 9.

But if the carrier's rule, fair on its face, has been unequally applied and the suit is for damages, occasioned by its violation or discriminatory enforcement, there is

no administrative question involved, the courts being
called on to decide a mere question of fact as to whether
the carrier has violated the rule to plaintiff's damage.
Such suits though against an interstate carrier for damages
arising in interstate commerce, may be prosecuted either
in the state or Federal courts.

4. It makes little difference what name is given the
cause of action sued on in the present case; or whether
it is treated as a suit for a breach of the carrier's common
law duty to furnish cars, or an action for damages for the
carrier's unjust discrimination in allotting cars to the
Berwind-White Company, while at the same time refus-
ing to follow its own rule and furnish them to the Puritan
Company on the basis of mine capacity. In either case
the liability is the same. For where the carrier performs
its duty to A and at the same time fails to perform its
duty to B, there has been, in a sense, a discrimination
against B. In those instances neither the cause of action,
nor the jurisdiction of the court, is defeated because the
breach of duty is also called an unjust discrimination.

In the present case the pleadings contained no reference
to the Commerce Act. The damages grew solely out
of the fact that the Puritan Company failed to receive
the number of cars to which it was entitled. The plaintiff's
right and measure of recovery would have been exactly
the same if the cars had been furnished to a Manufactur-
ing Plant, instead of to the Berwind-White Coal Company.
The plaintiff's cause of action and damages would have
been the same if the failure to receive the cars had been
due to the fact that the carriers negligently allowed
empty cars to stand on side tracks; or, if by reason of a
negligent mistake they had been sent to the wrong point.
The motive causing the short supply of cars was there-
fore wholly immaterial, except as corroboration of other
evidence showing an actual shortage of cars, so that, if
we ignore the plaintiff's characterization of the defend-

ant's conduct, and consider the nature of the case, alleged in the first count and established by the evidence, it will appear that the Puritan Company was entitled to recover because of the fact that the carrier failed to comply with its common law liability to furnish it with a proper number of cars. What was a proper supply was a matter of fact.

5. Ordinarily a shipper, on reasonable demand, would be entitled to all the cars which it could promptly load with freight to be transported over the carrier's line. But that is not an absolute right and the carrier is not liable if its failure to furnish cars was the result of sudden and great demands which it had no reason to apprehend would be made and which it could not reasonably have been expected to meet in full. The common law of old in requiring the carrier to receive all goods and passengers recognized that "if his coach be full" he was not liable for failing to transport more than he could carry. Hutchinson on Carriers, 146; *Lovett* v. *Hobbs*, 2 Shower, 127; *Riley* v. *Horne*, 2 Bing. 217; *Peet* v. *Ry.*, 20 Wisconsin, 594. The same principle is applicable to those who transport freight in cars drawn by steam locomotives. The law exacts only what is reasonable from such carriers— but, at the same time, requires that they should be equally reasonable in the treatment of their patrons. In case of car shortage occasioned by unexpected demands, they are bound to treat shippers fairly, if not, identically. In determining how the inadequate supply shall be distributed, it might be necessary to consider the character of the freight tendered—whether perishable or staple and whether a necessity of life needed in crowded cities and the like. In the distribution of cars to coal companies it might be necessary to determine whether account should be taken of system cars, foreign cars, private cars and the company's own coal cars. In many cases the determination of such an issue would call for the exercise of the regulating function of the Commission. That was true

in *Morrisdale Coal Co.* v. *Pennsylvania Railroad,* 230 U. S.
304, 312–314.   There the plaintiff admitted that it had
received all the cars to which it was entitled under the
carrier's rule, but insisted that the rule itself was unrea-
sonable and unjustly discriminatory since it took no ac-
count of private and foreign cars controlled by the mining
company.  The reasonableness of the rule was a matter
for the Commission.

6. The present suit, however, is not of that nature.   It
is not based on the ground that the Pennsylvania Rail-
road's rule to distribute in case of car shortage on the basis
of mine capacity, was unfair, unreasonable, discriminatory,
or preferential.   But, as shown above, the plaintiff alleged
it was damaged by reason of the carrier's failure to furnish
it with cars to which it was entitled.   In support of that
issue of fact the plaintiff relied on the carrier's own rule as
evidence.   That rule, and the carrier's Distribution Sheets,
showed the number of cars to which the Plaintiff, the
Berwind-White Company and other Coal Companies in
the district, were each entitled.   The evidence further
showed that the plaintiff did not receive that number of
cars to which by rule it was thus entitled.   So that on the
trial there was no administrative question as to the rea-
sonableness of the rule but only a claim for damages oc-
casioned by its violation in failing to furnish cars.   *Penna.
R. R. Co.* v. *International Coal Co.,* 230 U. S. 197.   The
state and Federal courts had concurrent jurisdiction of
such claim against an interstate carrier without a prelim-
inary finding by the Commission.

7. It is, however, argued that such a question, calling
for the exercise of the administrative function of the Com-
mission, did in fact arise out of the defendant's claim and
contention that the court should have taken private cars
into account in determining whether the plaintiff received
the number to which it was entitled.   But, probably be-
cause of the carrier's own rule of distribution, there was

no pleading raising such an issue, and there was no sufficient evidence as to the number of private cars received by the Puritan, the Berwind-White, or other companies. The information on that subject was peculiarly within the knowledge of the carrier and proof adequate to furnish a basis for the contention should have been offered—if, indeed, the carrier could have been heard to insist that private cars should have been counted when its own rule, as well as the general practice in the United States, was to exclude them in calculating the number of coal cars to which each mine was entitled. Neither need we inquire whether the fact that the Commission subsequently announced a rule, under which private cars had to be taken into account in making the distribution, could be given a retrospective effect. For, be that as it may be, the exception was properly disallowed, because, as held by the Supreme Court of Pennsylvania, no relevant evidence was offered to support the contention, and no point was raised during the trial, that private cars should be counted in the distribution.

*Judgment affirmed.*