THE ERIE RAILROAD CO. *v.* THE STEWART FURNACE CO.

THE PENNSYLVANIA RAILROAD CO. *v.* THE STEWART FURNACE CO.

*Jurisdiction—Action by shipper against railroad—Failure to deliver or spot cars—Determination of damages by railroad commission prerequisite to suit—Common-law duty of railroad merged into tariffs.*

1. A court has no jurisdiction to entertain an action by a shipper against a railroad company for damages for an alleged violation of defendant's common-law duty to deliver and spot cars in plaintiff's plant by making a charge for the service when no charge is made for such service rendered plaintiff's competitors, where the complaint involves only intrastate shipments within the state of Pennsylvania, and the defendant railroad company has filed with the Pennsylvania State Commission a tariff which per-

mits such unjust and discriminatory charges, and such tariff is complied with by the railroad, and has not been suspended or disapproved by the Commission. The complaining shipper, by virtue of Section 5, Article 5, of the law governing the Pennsylvania Commission, cannot institute such an action until after his complaint has been submitted to the Pennsylvania Commission and that Commission has determined the amount of reparation which should be made.

2. Whatever the common-law duty of the railroad was, it is merged into the duly filed tariff, in so far as the tariff is specific, and the rights of the parties, so far as the tariff specifically provides, are controlled by it.

(Decided February 5, 1923.)

ERROR: Court of Appeals for Cuyahoga county.

Messrs. *Cook, McGowan, Foote, Bushnell & Lamb,* for plaintiff in error, Erie Railroad Company.

Messrs. *Squire, Sanders & Dempsey,* for plaintiff in error, Pennsylvania Railroad Company.

Messrs. *Dustin, McKeehan, Merrick, Arter & Stewart,* for defendant in error.

WASHBURN, P. J. This case has been very thoroughly argued and briefed by able counsel, who are familiar with every phase of the controversy, and, therefore, we may properly merely state our conclusions without detailing the facts at length.

There being two cases, alike as to facts, and controlled by the same legal principles, we will refer to the parties simply as "railroad" on one side, and "shipper" on the other.

The controversy concerns solely intrastate shipments within the state of Pennsylvania.

Prior to April 1, 1914, under tariffs approved

by the United States Interstate Commerce Commission, having jurisdiction over interstate shipments, and a similar commission in Pennsylvania controlling intrastate shipments, the railroad served the shipper, and other shippers similarly situated in the same rate district, by delivering cars in the plants of the shippers, at the place desired for unloading, and performed a similar service as to outgoing shipments, such services being rendered for the regular and established line-haul charge. This service was rendered for the most part by the railroads' power, but in some instances the shipper furnished the power and performed the service of spotting within his plant, but he was paid therefor by the railroad, so that there was no discrimination between those who furnished power and those not doing so, and all of such service as to each of the shippers complied strictly with the duly filed tariffs of the railroad, which were approved by the commissions aforesaid.

The shippers complaining in these cases are shippers who spotted their own cars and who were paid therefor by the railroad out of the line-haul charge, in accordance, as has been said, with the duly filed and published tariffs.

The tariffs were alike and applied to both interstate and intrastate shipments.

Shortly previous to April 1, 1924, the United States Interstate Commerce Commission found that the service as to spotting and as to outgoing shipments, which the railroad had been furnishing, either by its own power or by *paying* therefor as aforesaid, was discriminatory as to other classes of shippers, and that it was not proper for the

railroad to furnish for the line-haul charge such service, either by doing the work or paying for the doing of it. The railroad thereupon filed revised tariffs complying strictly with the decision of the Commission.

The first tariff so filed cut off payment to those shippers who furnished power for such service of spotting. It specified an advance by leaving the line-haul rate the same and discontinuing a part of the service which the rate theretofore included. In other words, it ended the service furnished for the line-haul rate at the interchange switch. Among the shippers to which such revised tariff applied were the shippers here complaining. The other of such tariffs provided for a charge for such spotting service in addition to the line-haul charge, and that tariff applied to such shippers as had not been providing power for such service. When these two tariffs were filed, then service could continue just as it had theretofore, and there would be no discrimination; those shippers who did not furnish power would get the service as before, but would have to pay extra for it, and those, like the complaining shippers, who performed the service themselves, as heretofore, would receive no payment therefor.

If these tariffs had continued in force there would be no lawsuit here, but the United States Interstate Commerce Commission suspended the tariff requiring non-power furnishing shippers to pay for such service in addition to the line-haul charge, and *left in force the tariff cutting off complaining shippers' right to be paid for performing such service so performed by them.*

The action of the Commission, suspending the

tariff by which non-power furnishing shippers were to pay for such service in addition to the line-haul charge, restored the former tariff by which the railroad furnished such service to such shippers without additional charge, but the action of the Commission in letting stand the tariff by which complaining shippers could not get pay for performing such services themselves left in force a tariff as to them that ended the service of the railroad for the line-haul charge at the interchange switch.

The railroad obeyed both tariffs, and that resulted in the non-power-furnishing shippers getting the service and the power-furnishing shippers not getting the service. This discrimination was brought about not by the railroads' discriminatory manner of enforcing the rule, but by the discriminatory character of the tariffs themselves. That discrimination resulted not from the tariffs, as filed by the railroad, but from the change made in the tariffs by the Commission when it suspended one tariff and not the other. Such being the case, the remedy of the complaining shippers, so far as interstate shipments were concerned, was by an application to the United States Commission to have such tariffs declared unjust, and for reparation, and, so far as intrastate shipments were concerned, the remedy was by application for reparation to the Pennsylvania Commission.

Where the discrimination is in the rule itself, no court has jurisdiction of a suit against an interstate carrier for damages occasioned by its enforcement, until the Commission has declared the practice to be discriminatory and unjust. *Pennsylvania Railroad Co.* v. *Puritan Coal Mining Co.*, 237 U. S., 121.

That relief was sought and obtained as to interstate shipments by application to the United States Commission, but as to intrastate shipments this suit was brought without application having been made to the Pennsylvania Commission.

The specific question for us to determine is whether or not the trial court has jurisdiction in this suit to grant the relief sought.

It should be borne in mind that this action involves intrastate shipments, and that the railroad filed with the Pennsylvania Commission the same tariffs that it filed with the Interstate Commission, and that, so far as the record shows, the Pennsylvania Commission did not suspend any of the tariffs filed, or any part thereof.

The law of Pennsylvania provides that the Pennsylvania Commission may determine whether or not any rates which have been collected, or any acts which have been done or omitted to be done, or any regulations, classifications or practices of the railroads, have resulted in discrimination and consequent damages to shippers. It is also provided that the Commission shall have the power and authority to make an order for reparation, awarding and directing payment to the complaining shippers of the amount of damages sustained in consequence of such unjust, unreasonable or unlawful collections, acts or omissions, regulations, classifications or practices of the railroad. It is further provided that the Commission shall state in its findings the exact amount to be paid. The section of the law making these provisions, Section 5 of Article V, also provides the following:

"No action shall be brought in any court on account of the wrongs or injuries referred to in

this section, unless and until the commission shall have determined that the rate, regulation, classification, practice, act, or omission in question was unjust, unreasonable, or unjustly discriminatory or unduly or unreasonably preferential, or in excess of the rates contained in the said tariffs or schedules, and, then, only to recover such damages as may have been awarded and directed to be paid by the commission in said order.''

It is conceded that under this law the Pennsylvania Commission had jurisdiction and could have granted to complaining shippers the relief sought in this action, but the shippers also claim that they may prosecute this action because it is an action for damages for the violation by the railroad of its common-law duty to complete its line haul by delivering and spotting the shipments in the plant of the shipper, and that, under the Pennsylvania law, a shipper may pursue this remedy in addition to the remedy provided by application to the Pennsylvania Commission.

The claim that this is a suit for the violation of a common-law duty by the railroad is based upon the fact that the railroad had for thirty years recognized that it was its duty, as a common carrier, to deliver cars by spotting them in the plants, and that such had been the custom and course of dealing between the railroad and complaining shippers for such length of time, and it is claimed that the railroad could not relieve itself of that duty unless it was prohibited from performing that duty by some statute, or by some duly published tariff.

We cannot agree with counsel that at the time of these transactions there was a common-law duty

on the part of the railroad to deliver and spot cars in complaining shippers' plants. We are of the opinion that where a tariff is duly filed and approved by the Commission, the rights of the parties, so far as that tariff specifically provides, are governed and controlled by such tariff. What would be the common-law duty in the absence of a tariff specifically determining what the shipper should pay, and what service the railroad should render for such payment, we need not inquire.

In this case we find that in reference to intrastate shipments, the duly filed and published tariff, so far as complaining shippers are concerned, provided that for the line-haul charge the railroad would transport the cars to the interchange switch. The tariff was not disapproved by the Pennsylvania Commission. Whatever the common-law duty of the railroad was, it was merged in or modified by that tariff, which constituted a contract by which the rights of the parties must be judged, unless the Pennsylvania Commission disapproved of such tariff, in which event the Commission was fully authorized to grant reparation to complaining shippers, the same as was done by the Interstate Commerce Commission in regard to interstate shipments.

But it is claimed that Section 29, Article V, of the Pennsylvania law, reserves the right to shippers to prosecute this action in the courts, because that section provides that (except as otherwise provided therein) the law shall not be construed to "abridge or impair any of the obligations, duties, or liabilities of any public service company in equity or under the existing common or statutory law of the Commonwealth; but all such obligations,

duties, and liabilities shall be and remain as heretofore. And, *except as herein or otherwise provided,* nothing in this act contained shall in any wise abridge or alter the existing rights of action or remedies in equity or under the common or statutory law of the Commonwealth."

It will be noted that existing rights and remedies are to be preserved *except as otherwise provided in the law.* That law provided that a duly filed and published tariff should be obeyed by shipper and railroad. In so far as the tariff is specific, it supersedes the common law and becomes the contract of the parties. So far as it applied to complaining shippers, the railroad complied strictly with the tariff in force, and, as we view it, the real complaint here should not be that the common-law duty to deliver and spot cars in the plants remained, notwithstanding the tariff, but that the railroad, while it obeyed this tariff, did not obey another tariff applying to complaining shipper's competitors who received the service of delivery and spotting of cars in their plants and paid no more than complaining shippers who performed that service themselves.

This situation, unlike the interstate shipments heretofore referred to where the Interstate Commerce Commission made the rates unjust and discriminatory by its suspension of one tariff and not the other, presents a discrimination damaging to complaining shippers, which does not result from the rule but is occasioned by the railroads' violation or discriminatory enforcement of a rule.

As to intrastate shipments it must be remembered that during all this time the tariff, which was not suspended by the Pennsylvania Commission,

required the railroad to charge complaining shippers' competitors for delivering and spotting of cars in plants. In other words, the service for the line-haul charge ended at the interchange switch for both complaining shippers and their competitors. The railroad so ended its service as to complaining shippers, but not as to their competitors. It enforced the tariff against complaining shippers, but not against their competitors, the tariffs being the same in both instances.

We construe the Pennsylvania law to provide in plain terms that for such unjust and discriminatory treatment of complaining shippers, relief must be sought by first applying to the Pennsylvania Commission. The section preserving the rights and remedies of shippers is expressly limited by other provisions of the law, and other provisions of the law provide that for such a wrong and injury "no action shall be brought in any court" unless and until the commission "has passed upon the matter and fixed the damages to be recovered." The law further provides that in such a proceeding before the commission, the railroad "shall not be permitted to avail itself of the defense that the service was, in fact, rendered to plaintiff at the rate contained in its tariff or schedules in force at the time payment was made and received."

The facts present a "wrong and injury referred to" in said section, and that section provides that for wrongs and injuries referred to therein "no action shall be brought in any court,   *   *   * unless and until the commission" shall have determined the "exact amount to be paid."

As to intrastate shipments within the state of Pennsylvania, we are of the opinion that the com-

plaint of the shippers made in this action is a complaint which is specifically covered by Section 5, Article VI, of the law governing the Pennsylvania Commission, heretofore referred to, and that by that law the shipper has no right to maintain an action for redress of such complaint until after his complaint has been submitted to the Pennsylvania Commission, and that Commission has determined the amount of reparation which should be made.

It follows that the court below was without jurisdiction to render judgment in favor of the shipper, and for that reason the judgment is reversed, and upon the conceded facts we render the judgment here which should have been rendered in the court below and dismiss the shipper's actions at its costs.

*Judgment accordingly.*

PARDEE and FUNK, J., concur in judgment.

Judges of the Ninth Appellate District, sitting in place of Judges VICKERY, LEVINE and SULLIVAN, of the Eighth Appellate District.