(110 So. 729)

No. 25929.

**GEORGE H. KOEPP, Inc., v. NEW ORLEANS GREAT NORTHERN R. CO.**

(Oct 5, 1926. Rehearing Denied Nov. 29, 1926.)

*(Syllabus by Editorial Staff.)*

1. **Carriers ⟨⟩44—Carrier is excused for failure to furnish cars by shortage due to unforeseen causes.**

Carrier is excused for failure to furnish cars by shortage, not occasioned by its own acts, but due to unforeseen causes and circumstances against which it was reasonably impossible to provide.

2. **Carriers ⟨⟩13(3)—Carrier cannot favor one shipper over another during car shortage.**

Carrier cannot take advantage of car shortage so as to extend privileges to one shipper to prejudice of another.

3. **Carriers ⟨⟩45 — Evidence held insufficient to show that carrier discriminated against sawmill in furnishing freight cars during car shortage.**

Evidence *held* insufficient to show that carrier discriminated against plaintiff who operated sawmill, in furnishing freight cars to transport lumber during car shortage.

4. **Carriers ⟨⟩44—Carrier is entitled to notice of different kinds of cars ordered.**

One operating sawmill, in ordering freight cars from railroad, must stipulate whether they are to carry lumber or piling, so as to enable carrier to supply the demand, since different kind of car is required.

5. **Carriers ⟨⟩44—Demand on carrier for performance of public duty should be specific.**

When demand is made on carrier for performance of public duty, it should be specific enough to reasonably inform carrier of what it is expected to do.

Appeal from Twenty-Second Judicial District Court, Parish of St. Tammany; Prentiss B. Carter, Judge.

Action by George H. Koepp, Incorporated, against the New Orleans Great Northern Railroad Company, in which Edward A. Koepp, receiver, was substituted as party plaintiff. Judgment for plaintiff for less than amount prayed for. Defendant appeals, and the plaintiff answers the appeal, asking that judgment be increased. Judgment set aside, and judgment for defendant ordered.

Benj. M. Miller and Thos. M. Burns, both of Covington, for appellant.

Harvey E. Ellis, of Covington (Wm. C. Dufour, of New Orleans, of counsel), for appellee.

Adrian D. Schwartz, of Covington, for New Orleans Credit Men's Ass'n, amicus euriæ.

ROGERS, J. In September, 1921, the plaintiff company brought this suit to recover

$56,084.57 as damages caused by the failure of the defendant company to furnish cars required for the transportation of lumber and piling between March 1, 1920, and December 31, 1920.

Subsequent to the filing of the petition, before any pleading was filed by the defendant, and over its objection, Edward A. Koepp, who had been appointed receiver of the plaintiff company, was substituted as the party plaintiff.

The lengthy petition, epitomized, shows that the plaintiff company in the years 1919 and 1920 was operating a sawmill at Smith's Spur, a point on the line of the defendant company's railroad; that between October 1, 1919, and August 30, 1920, both inclusive, it received a number of orders for lumber and piling to be shipped over said railroad; that it sawed the lumber required to fill the orders, but was unable to make deliveries because the defendant railroad company failed to provide the cars needed for the transportation of its product, notwithstanding the cars were ordered and the defendant company promised to furnish them; that the undelivered lumber and piling, together with other lumber, remained on the yard of the plaintiff company, because of its inability to sell it due to the failure of the defendant company to distribute equitably and to supply the cars in which to ship it, until the night of December 31, 1920, when the sawmill, lumber and piling caught fire and were totally destroyed.

Petitioner itemized its losses as follows: viz., on undelivered lumber, less insurance received thereon, $30,067.12; on undelivered piling, $12,588.30; for penalties incurred or paid for failure to deliver lumber, $3,429.15; and for damages to its credit and reputation, $10,000.

The defendant company first excepted to the jurisdiction of the court ratione personæ. The exception was overruled. It then pleaded the prescription of one year to certain items of plaintiff's demand and filed, also, exceptions of vagueness and of no cause of action. All these pleas were referred to the merits.

The defendant company, in its answer, alleged, substantially, that during the period set forth in the petition, and especially subsequent to March 1, 1920, there was throughout the country and particularly in the south a general shortage of cars and inability to procure freight cars, as plaintiff knew, and that during this period the defendant company used all possible efforts to obtain cars to fill the requirements of petitioner and other shippers, but was frequently unable to do so, and so informed the plaintiff company; that it furnished petitioner all the cars it was able to furnish and at the same time furnished a due proportion of cars to other shippers; that the plaintiff received all the cars it was equitably entitled to receive, and more than it was able to use; and that frequently cars remained unloaded and idle at plaintiff's mill, which could and should have been used by other shippers.

The court below rendered judgment in favor of plaintiff for $30,067.12, the amount which it claimed to have lost on the undelivered lumber. The defendant appealed, and the plaintiff has answered the appeal, asking that the judgment be increased as prayed for in the petition.

The only one of its preliminary pleas and exceptions argued in this court on behalf of the defendant is the plea of prescription. It is unnecessary, however, for us to pass upon this plea, which applies only to certain items of plaintiff's demand, since our conclusion is that the case on the merits is with the defendant.

Plaintiff's contention, in effect, is that its alleged damages grew out of the failure to furnish it with the proper number of cars, and the discriminatory allotment of cars, by the defendant railroad company.

The law governing the relations between

the carrier and the shipper is stated in Penn. R. R. Co. v. Puritan Coal Co., 237 U. S. 121, 35 S. Ct. 484, 59 L. Ed. 867:

"Ordinarily a shipper, on reasonable demand, would be entitled to all the cars which it could promptly load with freight to be transported over the carrier's line. But that is not an absolute right and the carrier is not liable if its failure to furnish cars was the result of sudden and great demands which it had no reason to apprehend would be made and which it could not reasonably have been expected to meet in full."

[1, 2] Thus, a carrier is excused for its failure to furnish cars by a shortage of cars not occasioned by its own acts, but due to unforeseen causes and circumstances against which it was reasonably impossible to provide. But a carrier cannot take advantage of a car shortage so as to extend privileges to one shipper to the prejudice of another. It must, under such circumstances, as at all other times, act impartially in its dealings with the public.

[3] The soundness vel non of plaintiff's contention therefore depends upon the facts of the case.

The plaintiff claims, according to testimony offered in its behalf, that after the defendant retook possession of its line of railroad at the termination of government control on March 1, 1920, it placed a standing order with the defendant for four cars daily, and, from time to time, gave special orders for additional cars, running on occasions as high as ten cars a day. This testimony is controverted by the defendant.

We do not think the evidence in the record is sufficient to support the claim of the order by plaintiff of four cars daily. But, if it be conceded that such an order was given, the order itself was too indefinite to serve as the basis of an action for damages for the failure to furnish the cars.

[4] The evidence does not show the kind of cars needed, or how many were required for carrying lumber, or how many were required for carrying piling, a different character of car being required for the transportation of each of said commodities. The nature of the business is such and the duty of furnishing safe cars is such as renders it necessary for railroad companies to know what is to be loaded on the cars so that they can be provided to suit the occasion. Since different cars were needed, defendant was entitled to such reasonable notice of the particular kind and number of each desired as would enable it to supply the demand.

[5] It would be unreasonable to tie up the equipment of a railroad company to respond to the demand for cars by one shipper without regard to a present necessity therefor. When a demand is made upon a carrier for the performance of a public duty, the demand should be specific enough to reasonably inform the carrier of what it is expected to do. See Simmons v. Seaboard Air Line R. Co., 133 Ga. 635, 66 S. E. 783.

Plaintiff kept no record of the special orders for cars that it claims to have given the defendant. Its witnesses testify, merely in a general way, that such orders were given to the agent at Ramsey, the railroad station nearest plaintiff's mill, to conductors and brakemen on freight trains, by school children, and by telephone messages to and occasional interviews with certain employees and officials of the company. The defendant, on the other hand, kept an account of the cars which it claims were ordered by and furnished to plaintiff. This record shows that 193 cars were ordered by plaintiff between March 1, 1920, and December 31, 1920. Plaintiff also produced a statement from its records showing that plaintiff shipped 195 cars between said dates. Plaintiff attacks the verity of the statements because on their faces they disclose that it shipped out more cars than it received. According to another record, however, offered in evidence by defendant, setting forth in detail the cars set out at Smith's Spur between March 1, 1920,

and December 31, 1920, 202 cars, including three cars loaded with feed for stock, were placed at plaintiff's disposal, of which 194 cars were sent out loaded and eight cars were sent out empty. The discrepancy between the statements, of one loaded car, may be accounted for by the failure to note that one of the cars recorded as being sent out empty was, in truth and in fact, sent out loaded. Be that as it may, all the statements considered with reference to each other disclose that 202 cars for account of the plaintiff were sent out at Smith's Spur between March 1, 1920, and December 31, 1920, of which 194 or 195 cars were sent out loaded and 8 or 7 cars were returned empty.

The evidence clearly establishes that during the year 1920 there was a general and unprecedented shortage of cars on all railroad lines, including defendant's, throughout the country. This condition was generally known and was known to the officers of the plaintiff company, as they admitted on the witness stand. It is probably true that during said period the plaintiff company failed to obtain all the cars it needed for the purposes of its business; and it may be true that it was not furnished with all the cars which it ordered in the haphazard manner testified to by its witnesses. It is not certain, however, that it was not furnished, after the delays incident to the car shortage, with all the cars orders for which were given to or reached an agent of the defendant company who was authorized to furnish cars. No satisfactory explanation is given, in the evidence, for the return by the plaintiff of seven or eight empty cars when, as it claims, the cars were so badly needed for the shipment of its product.

Plaintiff, in its petition, enumerates 18 contracts for the sale of lumber and piling which, it alleges, it was unable to execute because of its inability to secure a sufficient number of cars in which to ship its product. The first contract referred to is the one with the Home Lumber Company, of New Orleans, dated October 1, 1919. This contract, according to the testimony, was not canceled until October 8, 1920, more than one year after it was entered into. There is nothing in the record to show how many cars were furnished plaintiff between October 1, 1919, and December 29, 1919, but between the latter date and October 8, 1920, plaintiff received 222 cars from the defendant. Plaintiff has not shown why it was unable to use the required number of these cars in order to carry out its contract with the Home Lumber Company.

The second contract in point of time mentioned in the petition is the one with the Geo. Dendinger Lumber Company of New Orleans, for 330,000 feet of lumber. This order was given November 21, 1919, and was canceled, verbally, some time in the fall of 1920, about one year after it was received and accepted by the plaintiff. No reason other than the general one of lack of cars is advanced by the plaintiff for its failure to execute the contract. It appears, however, that up to June 9, 1920, plaintiff had on hand for account of the contract, 172,415 feet of lumber, and between June 9 and October 1, 1920, it had manufactured 80,000 additional feet of the lumber required. It is not clear that plaintiff ever completed the manufacture of the entire amount of lumber called for by the contract. Be that as it may, the evidence discloses that the purchaser desired this lumber for export purposes, and that, as there was only a small space available for the stacking of lumber at New Orleans, and as it was difficult to secure a ship to carry the lumber abroad, it was desirous that the lumber should move out of the mill as one shipment so that it could be placed on board the vessel without any delay, necessarily involving additional expense. Approximately 22 box cars were required to take care of the movement. Nowhere in the evidence is it shown that plaintiff requested defendant to

furnish it with the specific number and character of cars required for the shipment of the lumber.

In neither of the two instances referred to is the showing made in the record by plaintiff sufficient to fasten any liability upon the defendant. This is also true of the other contracts set forth in the petition, which, in the interest of saving time and conserving space, we do not consider necessary to comment upon separately. Concerning these contracts, it suffices to say that the plaintiff received more than a sufficient number of cars to transport the lumber and piling called for by them, and that it, apparently, used the cars, in the exercise of its discretion, to take care of other shipments, many of which were for orders postdating the orders that it now alleges it was unable to fill. An explanation of this course of conduct is suggested in the constantly rising prices of lumber and piling during the early and middle portion of the year 1920, it being manifestly to the advantage of the plaintiff to accept and fill the later orders at the higher prevailing market prices. This condition existed until about the month of August, when the market began to get sluggish; and thereafter prices declined considerably, so that it became almost an impossibility to sell any lumber or piling at all.

If plaintiff was having the difficulty, which it now contends it was having, in securing cars to ship the output of its mill, it would seem that, in view of the general car shortage then existing, and in the interest of a sound business policy, it should have refused all new orders until it had fully executed the old contracts. Instead of doing this, it apparently took on all the business tendered, with full knowledge that it would be difficult, if not impossible, to carry out its obligations.

We do not find, from the evidence, that the defendant discriminated against the plaintiff or in favor of any other shipper.

For the reasons assigned, the judgment appealed from is set aside, and it is now ordered that there be judgment in favor of the defendant, rejecting plaintiff's demands at plaintiff's cost.

ST. PAUL, J., recused.