**John PRATER, on behalf of himself and others similarly-situated,**
**Plaintiff,**

**v.**

**MEDICREDIT INC., et al., Defendants.**

**Case No. 4:14CV159NCC.**

United States District Court,
E.D. Missouri,
Eastern Division.

Signed Sept. 18, 2014.

Anthony E. Lacroix, Lacroix Law Firm, Kansas City, MO, Michael L. Greenwald, Greenwald Davidson PLLC, Boca Raton, FL, for Plaintiff.

Scott J. Dickenson, Michael A. Clithero, James Redd, IV, Lathrop and Gage, LLP, Clayton, MO, for Defendants.

## *MEMORANDUM AND ORDER*

NOELLE C. COLLINS, United States Magistrate Judge.

Before the court is the Motion to Stay filed by Defendants. (Doc. 28). The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). (Doc. 9). The matter is fully briefed and ready for disposition. For the following reasons, the Motion will be denied.

## BACKGROUND

On January 28, 2014, Plaintiff filed a Class Action Complaint, pursuant to Fed. R.Civ.P. 23(a) and (b), for alleged violations of the Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227.[1] (Doc. 1). The Complaint alleges that Medicredit, Inc., and The Outsource Group, Inc. (jointly, Defendants) acted together and "routinely violate[ed] 47 U.S.C. § 227(b)(1)(A)(iii) [2] by placing non-emergency telephone calls to the cellular telephones of consumers using an automatic telephone dialing system and/or an artificial or prerecorded voice, without the prior express consent of the consumers." (Doc. 1, ¶¶ 3, 9). The Complaint alleges that, commencing in March 2013, Medicredit placed calls to Plaintiff's cellular telephone and left a pre-recorded message, in an attempt to collect a debt from a third person, whom Plaintiff did not know; Plaintiff spoke with a representative of Medicredit and told the representative that he was not the third person and instructed the representative not to call him again; after Plaintiff spoke with Medicredit's representative, Medicredit, on numerous specified dates, placed calls to Plaintiff's cellular telephone and left a

---

1. The TCPA, 47 U.S.C. § 227, provides for restrictions on the use of automated telephone equipment.

2. The TCPA, 47 U.S.C. § 227(b)(1), provides: It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—
    (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called par-

ty) using any automatic telephone dialing system or an artificial or prerecorded voice—
    . . . .
    (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call;

pre-recorded message in an attempt to collect a debt from the third party; Defendants did not have Plaintiff's prior express consent to make any telephone calls to Plaintiff's cellular telephone; and "Defendants had knowledge that they were using, and intended to use, an automatic telephone dialing system [ATDS] to make and/or an artificial prerecorded voice to place the telephone calls identified [by Plaintiff]." (Doc. 1, ¶¶ 10–42).

Defendants have filed a motion to stay this matter pending decisions by the Federal Communications Commission (the FCC) on issues in two petitions which, Defendants claim, are both presently before the FCC and dispositive of the issues presently before the court. Defendants rely on the doctrine of "primary jurisdiction" in support of their Motion. Defendants argue, alternatively, that this court should exercise its "inherent authority to stay this case in order to avoid burdening both parties" and the court when the issues before the court "may be disposed of entirely by the FCC's imminent rulings." (Docs. 28 at 1–3, 29). Specifically, the issues which Defendants state are before the FCC on Petitions for Declaratory Ruling are:

(1) whether the TCPA applies to nontelemarking calling activity (i.e., calls made exclusively for debt collection purposes);

(2) whether equipment used to make telephone calls must have the current capacity to generate and dial random or sequential numbers in order to be deemed a prohibited automatic telephone dialing system ("ATDS") for purposes of the TCPA;

(3) whether the absolute defense of "prior express consent" given by a "called party" under the TCPA attaches to the cellular phone number or the actual re-

cipient of the complained-of phone call; and

(4) whether there exists a good faith safe harbor under the TCPA in instances where a phone number has been reassigned from the consenting called party without notice or knowledge of the caller.

(Doc. 29 at 2).

Defendants also argue that they would be prejudiced without a stay because Plaintiff seeks responses to written discovery requests that are broad and cover a four-year time period. Defendants further state that FCC clarification would likely lessen the expense and burden of identifying consumers who might be proposed class members if the FCC imposes rules consistent with the views raised in the petitions. (Doc. 31 at 11).

In opposition to the pending Motion, Plaintiff argues: (1) it is unlikely that the FCC will rule on either petition cited by Defendants, and that, if it did so, it would not be in a timely manner; (2) Defendant's Motion presupposes rulings favorable to Defendants, despite contrary decisions issued by the FCC and circuit courts of appeal; and (3) even if the FCC were to make rulings favorable to Defendants, such rulings would not be retroactively applicable, and, therefore, not relevant here. (Doc. 30).

## DISCUSSION

■ The doctrine of "primary jurisdiction," which Defendants invoke, is a "common-law doctrine that is utilized to coordinate judicial and administrative decision making." *Access Telecomms. v. Sw. Bell Tel. Co.*, 137 F.3d 605, 608 (8th Cir.1998). The doctrine is applied when a "claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have

been placed within the special competence of an administrative body." *Alpharma, Inc. v. Pennfield Oil Co.*, 411 F.3d 934, 938 (8th Cir.2005) (internal quotation marks and citation omitted). The Eighth Circuit held in *Access Telecommunications*, 137 F.3d at 608, that application of the doctrine of "primary jurisdiction" depends on "whether the reasons for the doctrine are present and whether applying the doctrine will aid the purposes for which the doctrine was created"; there is no "fixed formula" for determining when the doctrine should be applied.

As further held in *Access Telecommunications*, 137 F.3d at 608:

One reason courts apply the doctrine of primary jurisdiction is to obtain the benefit of an agency's expertise and experience. The principle is firmly established that "in cases raising issues of fact not within the conventional experience of judges or cases requiring the exercise of administrative discretion, agencies created by Congress for regulating the subject matter should not be passed over." *Far East Conference v. United States*, 342 U.S. 570, 574, 72 S.Ct. 492, 494, 96 L.Ed. 576 (1952).... Another reason is to promote uniformity and consistency within the particular field of regulation. *See Nader v. Allegheny Airlines, Inc.*, 426 U.S. 290, 303–04, 96 S.Ct. 1978, 1986–87, 48 L.Ed.2d 643 (1976).

A distinction is made between cases that challenge the reasonableness of a regulation and cases that claim a regulation has been violated, with the former more appropriately decided by the appropriate administrative agency and the latter more appropriately decided by the courts. *See Access Telecommunications*, 137 F.3d at 608 (citing *Pennsylvania R.R. Co. v. Puritan Coal Mining Co.*, 237 U.S. 121, 131–32, 35 S.Ct. 484, 59 L.Ed. 867 (1915) ("In a suit where the rule of practice itself is attacked as unfair or discriminatory, a question is raised which calls for the exercise of the judgment and discretion of the administrative power which has been vested by Congress in the Commission.... The present suit, however, is not of that nature.... [T]here was no administrative question as to the reasonableness of the rule, but only a claim for damages occasioned by its violation in failing to furnish cars.... [Therefore,] [t]he state and Federal courts had concurrent jurisdiction of such claim ... without a preliminary finding by the Commission.")). Most importantly, the Eighth Circuit warns that courts should be "reluctant [ ] to invoke the doctrine [of primary jurisdiction] because added expense and undue delay may result." *Access Telecomms.*, 137 F.3d at 608.

Defendants are correct in their characterizations of the two primary reasons considered by the Eighth Circuit in deferring to the primary jurisdiction of a federal agency, and they point to numerous cases in other jurisdictions where stays were entered recently in TCPA cases. However, applying the above factors to this case, and with particular consideration given to the benefits of the FCC's expertise and the need to promote uniformity and consistency in this area of regulation, the court concludes that the doctrine is not appropriately applied here. First, at issue in this case is whether provisions of the TCPA have been violated. Such a determination is within the "conventional experience of [courts]" and is not within the particularized expertise of the FCC. *Access Telecomms.*, 137 F.3d at 608. Second, the issues presented in this matter do not require the exercise of administrative discretion by the FCC. *See id.* Third, a determination of whether the TCPA has been violated, as alleged by Plaintiff, does

not require the court to become "embroiled in the technical aspects" of matters within the FCC's jurisdiction. *See id.* (granting stay where court would be required "to become embroiled in the technical aspects of VG 7 service").

Fourth, as explained by Plaintiff, Defendants' suggestion that the petitions before the FCC will clarify whether unintentional calls are actionable misstates the allegations of Plaintiff's Complaint in that Plaintiff alleges that Defendants' actions were intentional, at least after Plaintiff allegedly informed Defendants that he was not the intended recipient of their calls.

Fifth, the FCC has already held that automatic dialing systems and debt collectors are subject to the TCPA's prohibitions. *See Swope v. Credit Management, LP,* 2013 WL 607830, at *4 (E.D.Mo. Feb. 19, 2013). Indeed, the FCC has already considered the particular issues posed by the petition at least twice. *See In re Rules and Regs. Implementing the Tel. Consumer Protection Act of 1991,* 18 FCC Rcd. 14,014, 14,090–93 (July 3, 2003); *In re Rules and Regs. Implementing the Tel. Consumer Protection Act of 1991,* 23 FCC Rcd. 559, 566–67 (Jan. 4, 2008). Both times, it has held that predictive dialers are considered automatic telephone dialing systems subject to the TCPA, and that debt collectors are not exempt from the statute's prohibitions. Thus, as articulated by the court in *Swope,* 2013 WL 607830, at *4, "[t]he interests of consistency and uniformity are better served by allowing this case to proceed based on the prior interpretations of the FCC that have been consistently applied by the courts, rather than postponing this case for an indefinite amount of time because the possibility that the FCC may decide to reconsider its past position."

Sixth, any change by the FCC in the manner in which it would apply the TCPA would only be applied prospectively, and it would, therefore, not affect the outcome of this case as Plaintiff seeks damages for past conduct. *Swope,* 2013 WL 607830, at *4 (citing *Am. Tel. & Tel. Co. v. FCC,* 978 F.2d 727, 732 (D.C.Cir.1992) (holding that rulemaking operates only prospectively)).

Seventh, to the extent Defendants argue that a stay should be granted because the pending petitions "ask[ ] the FCC to declare that predictive dialers do not fall under the TCPA's definition of a prohibited ATDS" (Doc. 29 at 2), the court held in *Swope,* 2013 WL 607830, at *4:

> As an initial matter, Credit Management contends that the viability of the plaintiff's claim is completely dependent on the ruling of the FCC. This is not correct. Plaintiff's second amended complaint alleges violations of the TCPA through the use of an automatic telephone dialing system *and* through the use of artificial or prerecorded messages. From the plain text of the statute, each of these violations is independently actionable; plaintiff may recover damages for calls made "using any automatic telephone dialing system *or* an artificial or prerecorded voice." 47 U.S.C. § 227(b)(1)(A) (emphasis added). Therefore, even if the primary jurisdiction doctrine should be invoked for the claims related to the automatic telephone dialing system, plaintiff's claims regarding the use of an artificial or prerecorded voice are appropriately before this court, regardless of the FCC's decision.

(emphasis in original).

In any case, the FCC has held, on two occasions, that a predictive dialer is an ATDS, and "[b]oth times, it has held that predictive dialers are considered automatic telephone dialing systems subject to the TCPA." *Swope,* 2013 WL 607830, at *4. Further, the court in *Trainor v. Citibank,*

*N.A.*, 2014 WL 2574527, at *2 (D.Minn. June 9, 2014), noted that the FCC has held that predictive dialers which do not dial random or sequential numbers, but which store or receive numbers from a database, fall within the " 'meaning and statutory definition of 'automatic telephone dialing equipment and the intent of Congress.' " (citing *In re Rules and Regs. Implementing the Tel. Consumer Protection Act of 1991*, 18 FCC Rcd. 14,014, 14,090–93 (July 3, 2003)).

Eighth, although Defendants cite cases from jurisdictions other than the Eastern District of Missouri where courts have stayed litigation pursuant to the primary jurisdiction doctrine (Doc. 29) (citing *Heinrichs v. Wells Fargo Bank, N.A.*, 2014 WL 2142457 (N.D.Cal. Apr. 15, 2014); *Matlock v. United Healthcare Servs., Inc.*, 2014 WL 1155541 (E.D.Cal. Mar. 20, 2014); *Barrera v. Comcast Holdings Corp.*, 2014 WL 1942829 (N.D.Cal. May 12, 2014); *Gusman v. Comcast Corp.*, 2014 WL 2115472 (S.D.Cal. May 21, 2014); *Higginbotham v. Hollins*, 2014 WL 2865730 (D.Kan. June 24, 2014); *Fontes v. Time Warner Cable Inc.*, 2014 WL 2153919 (C.D.Cal. May 19, 2014)), the district court's opinion in *Swope* is persuasive and it is on-point. Notably, this court is obligated to follow Eight Circuit precedent as articulated in *Access Telecommunications*, 137 F.3d at 608, and *Alpharma*, 411 F.3d at 938. *See Hood v. United States*, 342 F.3d 861, 864 (8th Cir. 2003) (holding that district courts in the Eighth Circuit are bound to apply Eighth Circuit precedent).

Ninth, Defendants should not be prejudiced by moving forward with discovery because the scope of discovery permitted in civil actions is broad, including materials inadmissible at trial but reasonably likely to lead to admissible evidence. See Fed. R.Civ.P. 26(b)(1). Moreover, even though the petitions understandably urge an expe-

dited FCC ruling and the issue has widespread implications, there is no assurance when or if the FCC will rule on the salient petitions or whether such rulings would be favorable to Defendants. However, a lengthy delay resulting from a stay would prejudice Plaintiff as well as potential class members. *See Trainor*, 2014 WL 2574527, at *2 ("It may be that the FCC is poised to overturn its prior decisions, but given that this issue has been pending before the FCC for more than four years, when that new decision will issue is anyone's guess."). If, however, FCC rulings are issued that are case-determinative, the court will revisit the matter.

### CONCLUSION

For the reasons addressed above, the court concludes that the reasons for the application of the doctrine of primary jurisdiction are not present in this matter and that applying the doctrine will not aid in the purposes for which the doctrine was created. As such, the court finds that Defendants' Motion to Stay should be denied.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion to Stay (Doc. 28) is **DENIED.**