**CURRAN**

v.

**MACKAY RADIO & TELEPHONE CO.**

United States District Court
S. D. New York.
May 11, 1954.

Shafter & Shafter, New York City, for plaintiff (Robert Klonsky and Jack Steinman, Brooklyn, N. Y., of counsel).

Galli & Locker, New York City, for defendant (Oscar A. Thompson, New York City, of counsel).

LEIBELL, District Judge.

This is an action to recover for the wrongful death of Peter J. Curran on October 15, 1948, as the result of an electric shock sustained in the course of his employment. At the time of his death decedent was employed by the defendant as a shift engineer and was licensed as such by the Federal Communications Commission. He was working at the defendant's radio station at Brentwood, Long Island, New York. The defendant, a Delaware corporation, duly licensed to do business in the State of New York, was engaged in the business of radio-telephone communications between the United States and foreign countries and was subject to the provisions of the Federal Communications Act of 1934.

Elaine Curran, the plaintiff herein, as widow of Peter J. Curran, who left no children him surviving, filed a claim against the defendant with the Workmen's Compensation Board of the State of New York, for benefits under the Workmen's Compensation Law of the State of New York, McK.Consol.Laws, c. 67. After a hearing held by that Board, which she attended, she was awarded, on March 8, 1949, compensation at the rate of $42 payable every two weeks; and the defendant, through its insurer, has paid and provided for the payment of the amount awarded, and has fully complied with the provisions of the award. These facts have been stipulated.

On August 26, 1949, this action was commenced, the plaintiff alleging that the defendant's negligence caused her husband's death and that the defendant violated the provisions of the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq. On April 30, 1953, the plaintiff filed an amended complaint alleging, in addition to the above, that the defendant violated the Federal Communications Act of 1934, Title 47 U.S.Code Annotated, § 151 et seq., in that the defendant "caused, allowed and permitted certain work to be performed and equipment erected and steps taken at the order, direction and request of the defendant, which acts were in violation of 47 U.S. C.A., Sections 201 et seq."; and further that "the defendant violated various acts

of the Labor Law of the State of New York [McK.Consol.Laws, c. 31] in so far as the decedent was required to work under such hazardous conditions as were in direct violation of the provisions of the said Labor Law"; and "that all of these unlawful and wrongful acts of defendant, its agents, servants and employees caused or contributed to the death of the decedent by electrocution."

The defendant, in its answer to the original complaint, denied the material allegations thereof, and set up two complete defenses:—First—contributory negligence on the part of the decedent; Second—that plaintiff's sole remedy was under the Workmen's Compensation Law of the State of New York. In its answer to the amended complaint the defendant added, as a third complete defense, that this Court has no jurisdiction of the subject matter, because the proceedings under the Workmen's Compensation Law are res judicata of the rights of the parties.

Subsequently the plaintiff moved, in the motion part of this Court, to strike the defendant's second and third complete defenses, on the ground that they were insufficient in law. On December 8, 1953, Judge Murphy denied the motion without prejudice, adding:

"Since jurisdiction should first be determined and since the defendant has not seen fit to raise this question by motion, I think it appropriate that the entire matter, including the present motion, be left to the determination of the trial court."

Thereafter the case came on for trial before me, without a jury, and the plaintiff made a preliminary motion to strike the second and third complete defenses. The defendant cross moved for judgment dismissing the complaint for lack of jurisdiction, or in the alternative for a summary judgment in its favor. The parties later entered into a stipulation as to the proceedings taken under the New York Workmen's Compensation Law.

The amended complaint alleges that by reason of the fact that the defendant was engaged in matters pertaining to interstate commerce and matters under Federal jurisdiction, and the fact that the amount sued for is in excess of $3,000, this Court has jurisdiction of the action. Diversity of citizenship is not alleged, although it exists in fact. The source of this Court's jurisdiction, on the pleadings, would be either 28 U.S.C.A. § 1331 or 28 U.S.C.A. § 1337.[1]

In determining whether this action arises under "the Constitution, laws or treaties of the United States" we must apply the tests discussed in Gully v. First Nat. Bank, 299 U.S. 109, at page 112, 57 S.Ct. 96, 81 L.Ed. 70. Is a right or immunity created by the Constitution or laws of the United States an essential element of plaintiff's cause of action? Or, as stated in Hull v. Burr, 234 U.S. 712, at page 720, 34 S.Ct. 892, at page 895, 58 L.Ed. 1587: Does this suit "really and substantially involve a dispute or controversy respecting the validity, construction, or effect of some law of the United States, upon the determination of which the result depends"?

The jurisdictional problem seems to have troubled the plaintiff in this litigation. In the original complaint she relied upon the Federal Employer's Liability Act, as the law which conferred Federal jurisdiction of her action. The amended complaint seeks to bring the action within the scope of Federal jurisdic-

---

1. "§ 1331. Federal question; amount in controversy

"The district courts shall have original jurisdiction of all civil actions wherein the matter in controversy exceeds the sum or value of $3,000, exclusive of interest and costs, and arises under the Constitution, laws or treaties of the United States."

"§ 1337. Commerce and anti-trust regulations

"The district courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies."

tion by pleading, in addition to the Federal Employers' Liability Act, violations of the Communications Act of 1934. T. 47 U.S.C.A. § 151 et seq.

■ The Federal Employers' Liability Act has no application to this action. Section 51 of Title 45 U.S.C.A. applies to "every common carrier by railroad" and those words "mean one who operates a railroad as a means of carrying for the public—that is to say, a railroad company acting as a common carrier". Wells Fargo & Co. v. Taylor, 1920, 254 U.S. 175, 187, 41 S.Ct. 93, 98, 65 L.Ed. 205. The 1939 amendment of Section 51, which added a paragraph to the section referring to "any employee of a carrier," cannot be construed as broadening the specific words "common carrier by railroad", which appear in the first paragraph of the section, so as to include other types of common carriers, such as carriers of messages. The amendment did not change the description of an "employer" liable under the Act; it merely enlarged the scope of the word "employee", to include certain employees of railroads not theretofore covered. Desper v. Starved Rock Ferry Co., 342 U.S. 187, at page 190, 72 S.Ct. 216, 96 L. Ed. 205. See also, Jones v. New York Central R. Co., 6 Cir., 182 F.2d 326; Latsko v. National Carloading Corp., 6 Cir., 1951, 192 F.2d 905. The plaintiff in this action has no claim cognizable under the Federal Employers' Liability Act. The next question is this—Has the plaintiff a claim cognizable under Sections 206 and 207 of the Communications Act of 1934?

■ The defendant, admittedly, was engaged in the business of radio-telephone communications between the United States of America and foreign countries and the decedent was its employee. Its operations came within the provisions of 47 U.S.C.A. Chapter 5, Communications Act of 1934, which applies to "all interstate and foreign communication by wire or radio and all interstate and foreign transmission of energy by radio, which originates and/or is received with-in the United States, and to all persons engaged within the United States in such communication or such transmission of energy by radio, and to the licensing and regulating of all radio stations as hereinafter provided; * * *". 47 U.S.C.A. § 152. The defendant was a "common carrier" of interstate or foreign communications by wire, or radio, within the definition of a "common carrier" contained in Section 153(h) of the Communications Act, which states:

"(h) 'Common carrier' or 'carrier'

"(h) 'Common carrier' or 'carrier' means any person engaged as a common carrier for hire, in interstate or foreign communication by wire or radio or in interstate or foreign radio transmission of energy, except where reference is made to common carriers not subject to this chapter; but a person engaged in radio broadcasting shall not, insofar as such person is so engaged, be deemed a common carrier."

■ Under the commerce clause of the Constitution, Art. 1, § 8, Congress is empowered "To regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes". Pursuant to the grant of power Congress may regulate the obligations of common carriers and the rights of their employees, arising out of injuries sustained by the latter where both are engaged in interstate commerce; as it did in the Federal Employers' Liability Act. When Congress legislates upon those subjects all state laws, covering the same field, are necessarily superseded, because of the supremacy of the national authority in that field. New York Central R. Co. v. Winfield, 1917, 244 U.S. 147, 37 S. Ct. 546, 61 L.Ed. 1045.

Under its power to regulate commerce Congress enacted the Communications Act of 1934. Section 151 of Title 47, United States Code, sets forth the purposes of the Communications Act of 1934, as follows:

"§ 151. Purposes of Act; Federal Communications Commission created

"For the purpose of regulating interstate and foreign commerce in communication by wire and radio so as to make available, so far as possible, to all the people of the United States a rapid, efficient, Nation-wide, and world-wide wire and radio communication service with adequate facilities at reasonable charges, for the purpose of the national defense, for the purpose of promoting safety of life and property through the use of wire and radio communication, and for the purpose of securing a more effective execution of this policy by centralizing authority heretofore granted by law to several agencies and by granting additional authority with respect to interstate and foreign commerce in wire and radio communication, there is hereby created a commission to be known as the 'Federal Communications Commission' which shall be constituted as hereinafter provided, and which shall execute and enforce the provisions of this chapter."

The language of this section indicates an intent to regulate the business of the interstate and foreign transmission of messages, both as to those engaged in the business, and also as to their customers' rights as against them. But there does not appear to be any intent to create any new substantive rights for employees injured in the course of their employment in that business. The Act established "a comprehensive system for the regulation of communication by wire and radio." Scripps-Howard Radio v. Federal Communications Commission, 316 U.S. 4, at page 6, 62 S.Ct. 875, 878, 86 L.Ed. 1229. "The purpose of the Act was to protect the public interest in communications." Same case, 316 U.S. at page 14, 62 S.Ct. at page 882. Under Section 152(b) (1) the Commission is specifically denied jurisdiction over "charges, classifications, practices, services, facilities, or regulations for or in connection with intrastate communication service of any carrier," with certain exceptions. This section is referred to as indicating, by contradistinction, the categories over which the Commission has jurisdiction in interstate communications.

Plaintiff's attorneys rely on 47 U.S. C.A. §§ 206 and 207 to sustain their contention that plaintiff has a cause of action cognizable under the Communications Act. Those sections provide:

"§ 206. Carriers' liability for damages

"In case any common carrier shall do, or cause or permit to be done, any act, matter, or thing in this chapter prohibited or declared to be unlawful, or shall omit to do any act, matter, or thing in this chapter required to be done, such common carrier shall be liable to the person or persons injured thereby for the full amount of damages sustained in consequence of any such violation of the provisions of this chapter, together with a reasonable counsel or attorney's fee, to be fixed by the court in every case of recovery, which attorney's fee shall be taxed and collected as part of the costs in the case."

"§ 207. Recovery of damages

"Any person claiming to be damaged by any common carrier subject to the provisions of this chapter may either make complaint to the Commission as hereinafter provided for, or may bring suit for the recovery of the damages for which such common carrier may be liable under the provisions of this chapter, in any district court of the United States of competent jurisdiction; but such person shall not have the right to pursue both such remedies."

The word "person" is defined in Section 153(i) of the Act as follows:

" 'Person' includes an individual, partnership, association, joint-stock company, trust, or corporation."

Plaintiff's brief refers to and quotes from a report of the Federal Communications Commission, dated October 5, 1949, on an application for a construc-

tion permit for certain additional transmitters at the defendant's trans-ocean telegraph station at Brentwood, N. Y.

I have examined that report [Docket No. 9188; File No. 890–C4–P–D]. It appears therefrom that two of the transmitters for which a license application was made to the Commission on July 19, 1948, were "type 34–E" transmitters, bearing Serial Numbers 4811 and 4812. Curran was electrocuted on October 15, 1948, apparently while he was working on or near some part of those transmitters. Transmitter No. 4811 was not then licensed, but it had been put on the air without a license prior to the accident. Transmitter No. 4812 had not been put on the air and had not been licensed.

Findings of Fact Nos. 18 and 19 of the Commission's report stated in part:

"18. There was considerable testimony by the three public witnesses to the effect that, aside from the dangerous bias voltage at the terminals of the 34–E type transmitters which caused the death of Peter Curran on October 15, 1948, they had protested to no avail to the management with respect to other dangerous conditions existing at Brentwood, * * *.

"19. As to the alleged dangerous conditions at Brentwood, Applicant's supervising engineer in charge of transmitting equipment testified that he designed the 34–E transmitter and that there was no extraordinary hazard in connection with them. Nevertheless, after the fatal accident of October 15 the antenna terminals of the exciter units on all of these transmitters were immediately disconnected pending an investigation of what actually happened, and they will continue disconnected until changes are made to make it impossible for such dangerous bias voltage to reach the antenna terminals even though present in the power amplifier. Therefore, such danger as may have existed in this connection has been removed. * * * *"

At a trial the plaintiff would have to prove under Sections 206 and 207 of the Act that Curran's death was a consequence of the defendant operating transmitter No. 4811 without having had it licensed by the Commission. The failure to have a license for that transmitter was a violation of Sections 301 and 303(e) and (n) of the Act.[2]

2. "§ 301. License for radio communication or transmission of energy

"It is the purpose of this chapter, among other things, to maintain the control of the United States over all the channels of interstate and foreign radio transmission; and to provide for the use of such channels, but not the ownership thereof, by persons for limited periods of time, under licenses granted by Federal authority, and no such license shall be construed to create any right, beyond the terms, conditions, and periods of the license. No person shall use or operate any apparatus for the transmission of energy or communications or signals by radio (a) from one place in any Territory or possession of the United States or in the District of Columbia to another place in the same Territory, possession, or District; or (b) from any State, Territory, or possession of the United States, or from the District of Columbia to any other State, Territory, or possession of the United States; or (c) from any place in any State, Territory, or possession of the United States, or in the District of Columbia, to any place in any foreign country or to any vessel; or (d) within any State when the effects of such use extend beyond the borders of said State, or when interference is caused by such use or operation with the transmission of such energy, communications, or signals from within said State to any place beyond its borders, or from any place beyond its borders to any place within said State, or with the transmission or reception of such energy, communications, or signals from and/or to places beyond the borders of said State; or (e) upon any vessel or aircraft of the United States; or (f) upon any other mobile stations within the jurisdiction of the United States, except under and in accordance with this chapter and with a license in that behalf granted under the provisions of this chapter. (June 19, 1934, c. 652, § 301, 48 Stat. 1081.)"

"§ 303. Powers and duties of Commission

*    *    *    *    *

In passing upon the motions now before me I will give the broadest possible application to the allegations of the amended complaint, and I will assume that there was a causal connection between Curran's death and defendant's alleged violation of the provisions of the Communications Act, § 301 and § 303(e) and (n).

Plaintiff's attorneys believe that they will be able to prove, at a trial, that Curran was killed as a consequence of the violation of Sections 301 and 303 of the Communications Act in relation to the licensing of equipment; and that the proof thereof will establish that plaintiff has a cause of action under Sections 206 and 207 of the Act. Cf. Atlantic Coast Line R. Co. v. Riverside Mills, 219 U.S. 186, 208, 31 S.Ct. 164, 55 L.Ed. 167.

It is the defendant's contention that even if the defendant violated the Federal Communications Act, and assuming that there was a causal connection between those violations and Curran's death, the plaintiff nevertheless has no cause of action cognizable under Sections 206 and 207 of the Act, and that the award and payments made to Elaine Curran under the New York Workmen's Compensation Law would be a complete bar to every claim pleaded in the amended complaint.

Sections 206 and 207 of the Communications Act were "copied from the Interstate Commerce Act practically verbatim" [78 Cong.Rec. 8824 (1934)] and were based on Sections 8 and 9 of the Interstate Commerce Act [78 Cong.Rec. 10313 (1934)]. It would seem that in enacting these sections of the Communications Act the Congress meant to give the same and no greater rights than had

been given by the language in Sections 8 and 9 of the Interstate Commerce Act, 49 U.S.C.A. § 8 and § 9. Stanley v. Western Union Telegraph Co., D.C.S.D.Fla. 1938, 23 F.Supp. 674.

The Interstate Commerce Act, including the provisions of Sections 8 and 9, was enacted in 1887. The first Federal Employers' Liability Act was not enacted until June 11, 1906, Act of June 11, 1906, 34 Stat. 232. It was declared unconstitutional Howard v. Illinois Central R. Co., 207 U.S. 463, 28 S.Ct. 141, 52 L.Ed. 297, and a second Act was enacted April 22, 1908, 45 U.S.C.A. §§ 51–59, which was held to be constitutional. Second Employers' Liability Cases (Mondou v. New York, N. H. & H. R. Co.), 223 U.S. 1, 32 S.Ct. 169, 56 L.Ed. 327. For the nineteen-year period from 1887 to 1906, we can find no case in the courts or before the Interstate Commerce Commission, in which an injured employee contended that those two sections, 8 and 9, of the Interstate Commerce Act created a new right of action in favor of an employee of the carrier, in addition to his common-law right based on the carrier's negligence.

Further, there does not appear to have been any proceeding before the Federal Communications Commission or any action in the courts based on Sections 206 and 207 of the Communications Act, in which an injured employee made any claim for damages for personal injuries resulting from a violation of the Communications Act, since the date of its enactment in 1934.

The absence of any such proceeding before the Interstate Commerce Commission or before the Federal Communications Commission and the absence of

"(e) Regulate the kind of apparatus to be used with respect to its external effects and the purity and sharpness of the emissions from each station and from the apparatus therein;

\*　　\*　　\*　　\*　　\*

"(n) Have authority to inspect all radio installations associated with stations required to be licensed by any Act or which are subject to the provisions of any Act, treaty or convention binding on

the United States, to ascertain whether in construction, installation, and operation they conform to the requirements of the rules and regulations of the Commission, the provisions of any Act, the terms of any treaty or convention binding on the United States, and the conditions of the license or other instrument of authorization under which they are constructed, installed, or operated."

any such action in the Federal courts shows the construction which has been placed on Sections 8 and 9 of the Interstate Commerce Act and on Sections 206 and 207 of the Communications Act by members of the Bar who specialize in personal injury actions.

Subchapter II of the Communications Act, in Section 201 deals with "Service and charges"; in Section 202, with "Discriminations and preferences"; in Section 203 with "schedules of charges; filing with Commission; changes in schedules; overcharges and rebates; penalty for violations"; in Section 204 with "Hearings on new charges; suspension pending hearing; refunds"; and in Section 205 provides that the "Commission [is] authorized to prescribe just and reasonable charges; penalties for violations". The provisions of Sections 206 and 207 on which plaintiff relies, immediately follow the above. Although the language of Section 206 as to the carriers' liability for damages to a person injured by its illegal conduct, is broad enough to cover the violation of any provision of the Act, the position of Section 206 in relation to Sections 201 to 205 is significant.

The remedies afforded to the "person injured" are declared in Section 207, to be by way of either a complaint to the Commission, or a suit in the United States District Court. Sections 208 and 209 relate to complaints to the Commission, the investigation thereof and the award of damages. They provide as follows:

"§ 208. Complaints to Commission; investigations

"Any person, any body politic or municipal organization, or State commission, complaining of anything done or omitted to be done by any common carrier subject to this chapter, in contravention of the provisions thereof, may apply to said Commission by petition which shall briefly state the facts, whereupon a statement of the complaint thus made shall be forwarded by the Commission to such common carrier, who shall be called upon to satisfy the complaint or to answer the same in writing within a reasonable time to be specified by the Commission. If such common carrier within the time specified shall make reparation for the injury alleged to have been caused, the common carrier shall be relieved of liability to the complainant only for the particular violation of law thus complained of. If such carrier or carriers shall not satisfy the complaint within the time specified or there shall appear to be any reasonable ground for investigating said complaint, it shall be the duty of the Commission to investigate the matters complained of in such manner and by such means as it shall deem proper. No complaint shall at any time be dismissed because of the absence of direct damage to the complainant. (June 19, 1934, c. 652, § 208, 48 Stat. 1073.)"

"§ 209. Orders for payment of money

"If, after hearing on a complaint, the Commission shall determine that any party complainant is entitled to an award of damages under the provisions of this chapter, the Commission shall make an order directing the carrier to pay to the complainant the sum to which he is entitled on or before a day named. (June 19, 1934, c. 652, § 209, 48 Stat. 1073.)"

The Commission has adopted Rules of Practice relating to Complaints under Title II, Subchapter II of the Act, of which Sections 206 to 209 are a part. (47 C.F.R. § 1.571 to § 1.590, 1949 Ed.) An examination of the rules shows that the "complaints" contemplated are those relating to violations of provisions of the Act, or of an order, rule or regulation of the Commission, which concern schedules of charges and classifications, unjust discrimination, undue preferences and the like. There is no rule of the Commission in relation to complaints, which in any way refers to personal injuries sustained by an employee of the carrier in

consequence of any violation of the provisions of the Act or the Regulations issued thereunder.

Rule § 1.580 provides:

"§ 1.580. Allegations; certainty. In case recovery of damages is sought the complaint should contain appropriate allegations showing such data as will serve to identify, with reasonable certainty, the communications or transmissions, or other services, in respect of which recovery is sought and shall state (a) that the complainant makes claim for reparation; (b) the name and address of each individual claimant asking reparation; (c) the name and address of defendants against which claim is made; (d) the communications, transmissions, or other services rendered, the charge applied thereto, the date when charges were paid, by whom paid, and by whom borne; (e) the period of time within which, or the specific dates when such communications, transmissions or other services were rendered; (f) points of origin and reception of such communications or transmissions, and if the damages sought to be recovered are for services other than communications or transmissions, then the allegations of the complaint shall state the nature and extent of such services, the date or dates when rendered, when paid for, and by whom borne; (g) nature and amount of injury sustained by each claimant; (h) if reparation is sought on behalf of others than the complainant, in what capacity or by what authority complaint is made in their behalf; and (i) that claimant has not filed suit in any court on the basis of the same claim."

The "injured person" referred to in Section 206 of the Act is the person "claiming to be damaged" in Section 207. Under the latter section he may make complaint to the Commission or bring suit in a United States District Court for the damages for which the carrier may be liable under the provisions of the Act.

Sections 8 and 9 of the Interstate Commerce Act (the same as §§ 206 and 207 of the Communications Act) have been interpreted by the United States Supreme Court, which has defined the limits of jurisdiction of the Commission and the Courts in the first instance. Administrative matters requiring preliminary resort to the Commission are heard by the Commission before resort to the Courts may be had. Claim for reparations may be heard by the Courts in the first instance, although if they require the determination of preliminary questions involving alleged unreasonable or discriminatory rates or other matters requiring special expert or technical knowledge and not just the construction of a document, resort should be first had to the Commission. Great Northern Ry. Co. v. Merchants' Elevator Co., 259 U.S. 285, at page 291, 42 S.Ct. 477, 66 L.Ed. 943. The claimant has the right to a judicial review of the Commission's reparations order or the Court's reparations judgment. United States v. I. C. C., 337 U.S. 426 at page 434, 69 S.Ct. 1410, 93 L.Ed. 1451. But all of the reparations cases, old and new, involve claims of those having occasion to use the facilities of the carrier, such as shippers.

█ A further consideration which leads me to believe that Sections 206 and 207 of the Communications Act do not bar the application of the New York Workmen's Compensation Law to plaintiff's claim herein, is that the Congress did not intend, by Sections 206 and 207 to pre-empt the field of claims for personal injuries by employees of carriers of messages.[3] The rights and remedies of Sections 206 and 207 are cumulative to those already existing at common law or by statute. Section 414 of the Communications Act of 1934, 47 U.S.C.A. § 414, provides:

---

3. Cf. New York Central R. Co. v. Winfield, 244 U.S. 147, 37 S.Ct. 546, 61 L.Ed. 1045.

"§ 414. Exclusiveness of chapter

"Nothing in this chapter contained shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this chapter are in addition to such remedies."

The phrasing of Section 414 of the Communications Act is identical with a provision in Section 22 of the Interstate Commerce Act, 49 U.S.C.A. § 22, which reads:

" * * * and nothing in this chapter contained shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this chapter are in addition to such remedies * * *."

In construing this clause of Section 22 of the Interstate Commerce Act and its relation to Sections 8 and 9 of the Act (from which, as we pointed out above, Sections 206 and 207 of Title 47 are copied) Mr. Justice Lamar stated, in the case of Pennsylvania R. Co. v. Puritan Coal Co., 1915, 237 U.S. 121, 35 S.Ct. 484, 59 L.Ed. 867:

"But §§ 8 and 9 standing alone, might have been construed to give the Federal courts exclusive jurisdiction of all suits for damages occasioned by the carrier violating any of the old duties which were preserved and the new obligations which were imposed by the commerce act. * * * But for this proviso to § 22 it might have been claimed that, Congress having entered the field, the whole subject of liability of carrier to shippers in interstate commerce had been withdrawn from the jurisdiction of the state courts, and this clause was added to indicate that the commerce act, in giving rights of action in Federal courts, was not intended to deprive the state courts of their general and concurrent jurisdiction. * * *

"Construing, therefore, §§ 8, 9, and 22, in connection with the statute as a whole, it appears that the act was both declaratory and creative. It gave shippers new rights, while at the same time preserving existing causes of action. It did not supersede the jurisdiction of state courts in any case, new or old, where the decision did not involve the determination of matters calling for the exercise of the administrative power and discretion of the Commission, or relate to a subject as to which the jurisdiction of the Federal courts had otherwise been made exclusive." 237 U.S. at pages 129–130, 35 S.Ct. at page 487.

The Supreme Court decision in the above case was applied by the New York Court of Appeals in Hewitt v. New York, New Haven & Hartford R. Co., 284 N.Y. 117, 29 N.E.2d 641, in which Judge Lehman, after discussing Sections 8 and 9 of Interstate Commerce Act, stated: "The act does not relieve carriers from common-law duties or deprive shippers and consignees of common-law rights except where it so provides expressly or by necessary implication. 284 N.Y. at page 123, 29 N.E.2d at page 643.

Similarly in the Communications Act of 1934, the Congress did not deprive an employee of a carrier of communications of his common-law right to claim damages for injuries received in the course of his employment, or of any rights therefor which he had under any State statute. Those rights were ample to protect him if he was injured. There would be no need to reiterate them. They were not being enlarged. They were preserved under Section 414.

In the broad general language of Section 206 we are asked to find a new field of Federal tort jurisdiction, which would include claims for personal injuries by the employees of common carriers of communications where the injuries resulted from the use of a piece of equipment which violated the provisions of the Act because the equipment was not licensed under Section 303(e) and (n) of the Act. We are asked to find, in a few brief phrases of Section 206, a right of action against an employer, such as that which was created by ten sections of the Federal Employers' Liability Act.

■ If the Congress had intended that an employee of a common carrier of communications should have an action at law for injuries sustained as a result of defective appliances installed or used in violation of the provisions of the Communications Act, it would have said so clearly. Workmen's Compensation laws were on the books of State Statutes for almost every State in 1934, when the Communications Act was enacted.[4] It is fair to assume that the members of the Congress knew that; and that they also knew the provisions of the Federal Employers' Liability Act, 45 U.S.C.A. §§ 51 to 60, in relation to railroad employees, enacted in 1908; and the provisions of the Jones Act in relation to seamen, 46 U.S.C.A. § 688, enacted in 1920, which incorporated a number of the provisions of the Employers' Liability Act.

To sustain the plaintiff's contention in the case at bar, would set a belated and I believe, an unsound precedent, which if it is to be established at this late date, should be left to the judgment of an appellate court.

Plaintiff's attorneys also argue that the New York State Workmen's Compensation Law does not apply because decedent's death was not the result of an "accidental injury" within the meaning of Section 2, Subdivision 7 of the Workmen's Compensation Law, and that this suit is analogous to an action brought on account of an intentional, wilful assault by an employer which would not bar an action at law despite the employee's general coverage under the insurance provided under the Act. Le Pochat v. Pendleton, 271 App.Div. 964, 68 N.Y.S.2d 594, affirming 187 Misc. 296, 63 N.Y.S.2d 313; and Lavin v. Goldberg Bldg. Material Corp., 274 App.Div. 690, 87 N.Y.S.2d 90. In DeCoigne v. Ludlum Steel Co., 251 App.Div. 662, 297 N.Y.S. 636, an employee was made ill by some pie which he purchased at a cafeteria operated by defendant for profit at its steel plant. The Appellate Division, Third Department, held that the provisions of the Workmen's Compensation Law did not apply; and that plaintiff could maintain an action at law against the defendant based on a breach of the warranty that the food was fit for consumption, and on another alleged ground that one of defendant's employees at the direction of defendant and its officers wilfully and unlawfully placed jalap in such pie without plaintiff's knowledge, which caused plaintiff to suffer the injuries of which he complains.

■■ The above cited cases did not involve an accidental injury. There was involved in each case an intention by the defendant to injure the plaintiff. "The Workmen's Compensation Law deals with accidental injuries, and not intentional wrongs". Mazarredo v. Levine, 274 App. Div. 122, at page 127, 80 N.Y.S.2d 237, 241. No such intentional injury could possibly be imagined in the case at bar, and it would not be a fair construction of the amended complaint to infer therefrom the charge that the defendant intended to electrocute the decedent. His unfortunate death was accidental.

■ The allegations in the amended complaint that defendant violated the State Labor Law, in that decedent was required to work under hazardous conditions that constituted a direct violation of the New York State Labor Law, do not make the provisions of the New York Workmen's Compensation Law inapplicable as a complete defense to plaintiff's action. The case of Cifolo v. General Electric Co., 305 N.Y. 209, 112 N.E.2d 197, 200, appears to be in point. There the plaintiffs alleged that the disease known as silicosis was contracted by them while working for the defendant, due to the failure of the defendant to provide and maintain proper devices to remove dust and impurities from the air at the plant in which they worked. The concluding paragraph of the majority opinion of the Court of Appeals states:

"No different legal result is brought about by the inclusion in these complaints of accusations that the wrongs complained of were violations of express provisions of the

4. Crowell v. Benson, 285 U.S. 22, at page 40, 52 S.Ct. 285, 76 L.Ed. 598.

State Labor Law, see §§ 200 and 299 thereof. For the reasons set forth in other parts of this opinion, it must be held that, for the contraction of silicosis, arising out of and in the course of employment, the sufferer's only recourse is that described in the Workmen's Compensation Law."

The defendant has moved for judgment dismissing the amended complaint on the grounds of lack of jurisdiction over any claim alleged to be based on the violation of a Federal statute, Jones v. Brush, 9 Cir., 143 F.2d 733; Bell v. Hood, 327 U. S. 678, 66 S.Ct. 773, 90 L.Ed. 939; or, in the alternative for summary judgment on the grounds that plaintiff in fact has no claim against the defendant under any Federal statute and that defendant's special defenses, based on the New York Workmen's Compensation Law, constitute a complete defense to any claim of plaintiff, whether based on the Federal law or on the New York law.

■ I have concluded that this Court has jurisdiction to entertain this action. In fact "the court must assume jurisdiction to decide whether the allegations state a cause of action on which the court can grant relief as well as to determine issues of fact arising in the controversy." Bell v. Hood, supra, 327 U.S. at page 682, 66 S.Ct. at page 776. The amended complaint pleads a claim that arises under the laws of the United States, 28 U.S.C.A. § 1331, and under an Act of Congress regulating commerce, 28 U.S.C.A. § 1337. This court therefore, has jurisdiction under each of said sections. But a proper construction and application of the Federal statutes on which the plaintiff relies, the Employers' Liability Act and the Communications Act, shows that plaintiff in fact has no claim under either of said statutes. The amended complaint should therefore be dismissed on the merits.

It appears from defendant's brief that the decedent, Peter J. Curran, was a resident of the State of New York. The defendant is a Delaware corporation with offices in this District. On the known facts, there is diversity of citizenship,

although it is not alleged as a basis for the jurisdiction of the Court in this case. Plaintiff has sued on the general theory of negligence, of tort liability, as well as on a claimed rule of statutory liability alleged to be created by Section 206 of the Communications Act of 1934.

If plaintiff had pleaded only the negligence of the defendant and if jurisdiction had been based solely on diversity of citizenship, the defense of compliance with the Workmen's Compensation Law would be a complete bar to the action.

Article 1, § 18 of the New York State Constitution, in relation to the Workmen's Compensation Law, provides:

"* * * and the remedy therefor shall be exclusive of all other rights and remedies for injuries to employees or for death resulting from such injuries; * * *."

Section 11 of the Workmen's Compensation Law provides that payments made to the employee or his next of kin under the Act "shall be exclusive and in place of any other liability whatsoever, to such employee, his personal representatives, husband, parents, dependents or next of kin, or anyone otherwise entitled to recover damages, at common law or otherwise on account of such injury or death, * * *."

The Supreme Court has declared the State Workmen's Compensation Act to be among the type of Acts which "bears so close a relation to the protection of the lives and safety of those concerned that they properly may be regarded as coming within the category of police regulations." New York Central R. Co. v. White, 243 U.S. 188, 207, 37 S.Ct. 247, 254, 61 L.Ed. 667.

■ Defendant's compliance with the provisions of the Compensation Act would be a complete bar to an action based on the right of the plaintiff, as administratrix, to recover for the wrongful death of the decedent under the provisions of Section 130 of the New York Decedent Estate Law, McK.Consol.Law, c. 13. Elaine Curran, decedent's widow was the sole person to whom the compensation award was made. She would be the sole person entitled to the proceeds

of any judgment recovered in this action. N. Y. Decedent Estate Law, § 133(1). In my opinion the second and third defenses are good against any claim the plaintiff may have under New York law, assuming jurisdiction because of diversity of citizenship. There is no need to permit a formal amendment, alleging diversity.

I therefore make the following disposition of the motions in this case.

Defendant's motion to dismiss the amended complaint in so far as it alleges any claim based upon the Federal Employers' Liability Act or the Federal Communications Act of 1934 is granted, because the plaintiff has no claim under either Act. The dismissal is on the merits.

The plaintiff's motion to strike the second and third special defenses based on the New York Workmen's Compensation Law is denied, because those defenses are good and a complete bar to any claim of the plaintiff under New York law based on defendant's alleged negligence, assuming this Court has jurisdiction of the action because of actual diversity of citizenship, although diversity was not pleaded.

Settle an order accordingly.