**Helen CRASKA, as Power of Attorney, Individually and as Power of Attorney for Raymond Edge, Plaintiffs,**

v.

**NEW YORK TELEPHONE COMPANY, a New York Corporation, Defendant.**

**Civ. A. No. 8592.**

United States District Court
N. D. New York.
March 30, 1965.

Anthony J. Fernicola, Utica, N. Y., for plaintiff.

Dugan, Casey, Burke & Lyons, Albany, N. Y., for defendant; Joseph J. Casey, Thomas W. Brown, Albany, N. Y., of counsel.

JAMES T. FOLEY, Chief Judge.

The lady plaintiff in this odd title was convicted on July 14, 1959 on her plea to one count of a multiple count indictment, charging the keeping of a disorderly house, in Oneida County Court, New York. She was fined $500.00, and the execution of a prison sentence for one year was suspended during her good behavior. Thereafter, in March 1960, she was subpoenaed before the Grand Jury which had been specially investigating alleged corruption in Oneida County by directive of the Governor of New York. The Assistant Attorney General was dissatisfied with her answers before the Grand Jury and she was cited to the sentencing judge for an order to revoke her suspended jail sentence on the ground she was evasive and untruthful before the Grand Jury. It was at this hearing in open court that an intercepted telephone conversation of March 18, 1960 was introduced over objection. Such interception and divulgence in open court of the telephone conversation form the basis for this lawsuit. There was an electronic recording of the telephone conversation and its transcription is contained in the record on the appeal to the United States Supreme Court, submitted on this motion. (pgs. 86–95). It evidences at least a disposition on her part to be uncooperative. As she put it in her own way in the telephone conversation before her Grand Jury appearance:

"* * * You know those others squawked and they want me to come down I guess and squawk, but I'm not going to say nothing. I don't know nothing. * * *" (pgs. 92–93).

The judgment revoking the suspended sentence was affirmed by the Appellate Division, Fourth Department. (People v. Craska, 12 A.D.2d 723, 211 N.Y.S.2d 684 (1960)). The Court of Appeals, New York, denied leave to appeal. The United States Supreme Court dismissed an appeal and denied certiorari. (367 U.S. 487, 81 S.Ct. 1678, 6 L.Ed.2d 1241 (1961)). The plaintiff, Helen Craska, was confined in prison for a ten-month

period. The complaint contains three claims or causes of action solely against the New York Telephone Company. Jurisdiction is laid under the Fourth and Fourteenth Amendments of the United States Constitution, Sections 206, 207, 501, 605 of Title 47 U.S.C. and Title 42 U.S.C. Sections 1981, 1982 and 1983, popularly known as the Civil Rights Act. Specifically, the first claim is based upon the telephone company allegedly aiding and abetting an illegal telephone interception on March 18, 1960 and aiding and abetting thereafter divulgence of such telephone conversation in violation of Sections 501 and 605 of Title 47. The damages in this claim are estimated at $150,000.00. The second cause of action is based upon breach of contract for the same illegal acts of interception and divulgence of a conversation on a private telephone line, and again, the damages sought are estimated at $150,000.00. The third cause of action is based upon the alleged constitutional and civil right violations, with the same money damage estimate of $150,000.00. The total demand for judgment of money damages is $450,000.00, together with attorney's fees and costs.

The complaint herein was filed in this District Court May 10, 1961. The attorney for the plaintiffs, by this motion filed in March 1964, requests partial summary judgment, relying primarily upon a stipulation made by the defendant company. This stipulation, entered into September 17, 1962, does admit that the defendant company, pursuant to a court order and a demand of a special Assistant Attorney General, did give from its records orally certain information concerning the telephone number furnished to Raymond B. Edge, who is the brother-in-law of Helen Craska, and the technical description of certain cables, poles, etc., which apparently allowed the effective wiretap to be made. It is contended by the attorney for the plaintiffs that this stipulation and admission removes any material fact issue except damages from the litigation. The attorney for the plaintiff, in noteworthy candor, also urges in a single page letter dated May 28, 1964, and filed as a reply brief to the substantial brief of the defendant that his motion for summary judgment should be allowed, due to the fact the previous criminal record of the plaintiff, Helen Craska, would be too much of a burden for a jury to decide liability along with damages. I would not think such novel proposition gives legally valid support for summary judgment grant.

Unquestionably, the problem of wiretapping under New York law and the federal statutes is in a chaotic stage, at least as it involves criminal sanctions and the use of such evidence obtained thereby in the state courts. There are many judicial statements in the federal writings that should be disturbing to State authorities. It is agreed by all that corrective legislation is imperative to clarify a serious conflict. The late Chief Judge Clark of this Circuit, dissenting in one of the leading cases, Pugach v. Dollinger, 2 Cir., 277 F.2d 739, at pg. 747, aff'd. 365 U.S. 458, 81 S.Ct. 650, 5 L.Ed.2d 678, comments on the paradox that what is authorized in New York by its Constitution and statute has been unqualifiedly held by the highest court of the land to be a violation of federal law. (New York Constitution, Art. 1, Section 12; New York Code of Crim.Proc. § 813–a; Benanti v. United States, 355 U.S. 96, 78 S.Ct. 155, 2 L.Ed. 2d 126). In Benanti, the Chief Justice stated that State legislation or the State Constitution is not allowed to contradict Section 605 of the Federal Communications Act. The observation of Chief Judge Clark in Pugach was that we have an absolute impasse going so far as to be almost ludicrous if the issue were not so fundamentally serious. (See also United States ex rel. Graziano v. McMann, 2 Cir., 275 F.2d 284, cert. den. Graziano v. State of New York, 365 U.S. 854, 81 S.Ct. 806, 5 L.Ed.2d 819).

There has been extensive writing in texts and in the Courts on the subject. Most have to do with the criminal aspect of the federal statutes, although there are some settled principles

to be gleaned that may apply and be pertinent to the issues of these three civil claims for money damages. First, in a criminal prosecution, a defendant is not deprived of standing to object if a telephone is listed to another, as long as the defendant was a party to the tapped conversation. (United States v. Tane, 2 Cir., (1964), 329 F.2d 848, 852 et seq.; United States ex rel. Ross v. LaVallee, 2 Cir., 2/23/65, 341 F.2d 823). Wiretapping does not violate the Fourth and Fifth Amendments to the Constitution, and such unlawful interception of a telephone conversation does not amount to a search and seizure prohibited by the Fourth Amendment. (Olmstead v. United States, 277 U.S. 438, 48 S.Ct. 564, 72 L.Ed. 944; Goldstein v. United States, 316 U.S. 114, 62 S.Ct. 1000, 86 L.Ed. 1312; United States v. Sullivan, (D.C. D.C.), 116 F.Supp. 480, 481; Pugach v. Klein, (SDNY), 193 F.Supp. 630; United States ex rel. Graziano v. McMann, supra, 275 F.2d at pg. 286; Williams v. Ball, 2 Cir., 294 F.2d 94).

 The New York Constitution and statute allowing a judge to issue an ex parte order authorizing a wiretap cannot contradict Section 605 and the policy therein, and such section applies to both intrastate and interstate communications. (Benanti v. United States, supra, 355 U.S. pg. 98, fn. 3, 78 S.Ct. pg. 157; id. pg. 100, fn. 5, 78 S.Ct. pg. 157). It is problematical whether aiding and abetting principles should be applied literally in a civil case as in a criminal case, but the nature of such activity for criminal responsibility has been described in the classic definition of Judge Learned Hand in United States v. Peoni, 2 Cir., 100 F.2d 401, 402, adopted in Nye & Nissen Corp. v. United States, 336 U.S. 613, 619, 69 S.Ct. 766, 93 L.Ed. 919.

It is clear from the testimony in the record on appeal filed in the Supreme Court together with the answers to interrogatories—and there is no evidence offered to the contrary from the plaintiffs' side—that the wiretap here was placed and the intercept made by a John William Peevers, associated with the Attorney General's Office, at the express direction of the Special Prosecutor and in accordance with the usual court order. Two troopers of the New York State Police, named in the record, assisted in the wiretap intercept, and the identification, listening and recording of the telephone conversation in which the plaintiff, Helen Craska, was a participant. There is no relationship to the wiretap and intercept by the New York Telephone Company in any respect shown other than that the information in its record, which could have been commanded by subpoena subject to criminal penalty if not obeyed, was given orally to these State officers. (See Executive Law, New York, McKinney's Consol.Laws, c. 18, Section 63(8)). The dilemma of the telephone company in these situations is obvious. The State Constitution and law compel acts by state subpoena power and judicial order from the telephone company that may lead to violation of express federal criminal law.

██ The claims here in accord with these principles will be discussed in reverse order. It is definite in the federal law cited above that the acts of interception and divulgence of a telephone conversation as of now do not violate constitutional right or the civil rights statutes. The Civil Rights Act was enacted in furtherance of the Fourteenth Amendment. (Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492). In my judgment, the third claim is not a proper one in the federal sense of these statutes for relief, and must fall.

█ The second cause of action is based upon breach of contract by the defendant company to provide a private telephone line. It is factually deficient, in my opinion, in that under the circumstances disclosed the individual plaintiff is not the real party in interest if suit on contract for a private telephone had any rational basis for civil suit under these circumstances. The power of attorney executed under Article 13 of the General Business Law of New York, McKinney's Consol.Laws, c. 20, by Raymond B. Edge, brother-in-law of Helen Craska,

who resided in Detroit, Michigan, relates solely to real estate transactions. There is no privity of contract between Helen Craska and the telephone company, and the telephone was listed in the name of the brother-in-law. This method of subscription undertaken and sought now to be used legally on its face is duplicitous and a subterfuge. Further, Sections 206 and 207 of Title 47, U.S.C. give no support to this claim because such statutes are intended for other purposes by their terms and are not related by reference or sense to Sections 605 and 501 of the Title. (Curran v. Mackay Radio & Tel. Co. (SDNY), 123 F.Supp. 83; Shaw Warehouse Co. v. Southern Railway Co., 5 Cir., 288 F.2d 759; cert. den. 369 U.S. 850, 82 S.Ct. 933, 8 L.Ed.2d 9).

■ There is only one claim with arguable and rational basis in the three filed. The relevant portion of Section 605 has been set forth and emphasized in many cases:

" * * *; and no person not being authorized by the sender shall intercept any communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person; * * *".

Section 501 provides the general criminal penalty for violators. Nowhere in either section is there provided by express language or implication the right for the aggrieved sender to commence suit for money damages. It is in this Circuit that Judge Learned Hand interpreted the statutes and promulgated the doctrine as he commented in the absence of contrary implications in the Statutes that there is civil liability. (Reitmeister v. Reitmeister, (1947), 2 Cir., 162 F.2d 691). This ruling was referred to and accepted in Pugach v. Dollinger, 2 Cir., 277 F.2d 739, 743, as one that creates a civil action for damages in favor of one whose line is tapped. No case has been found, nor have I been referred to any, where the telephone company has been made a defendant, or the sole defendant, as here, in a civil damage suit. There have been distinctions that quasi-judicial or judicial officers are not responsible civilly for damages under Section 605. (Simons v. O'Connor, (SDNY), 187 F. Supp. 702).

Most important, however, is the common sense analysis that must be made of the undisputed minor part the defendant company played in this situation. If the principle of aiding and abetting is to be applied, the conduct of the telephone company, acting under the compulsion of State law and process, cannot sensibly be said to have joined in a knowing venture of interception and divulgence of a telephone conversation, which it sought by affirmative action to make succeed. It is further important to note that the landmark Reitmeister case in this Circuit that created this type action for civil damages, based upon the pertinent statutes only, held that the dismissal below was clearly right as to certain defendants because they were not connected with the "publishing" of the intercepted messages. It is clear that the telephone company played no part in any degree in the divulgence in open court. The primary purpose of the statute, § 605 of the Federal Communications Act, is expressly under the terms of Section 501, enforceable by fine, imprisonment or both, and in my view should be considered as penal and strictly construed, but if considered as both penal and remedial should be reasonably construed. (Vol. 3 Sutherland Statutory Construction, Sections 5602, 5703). My construction, strict or reasonable, would be that under the undisputed portions of the record there is no showing of sufficient involvement in interception or divulgence to support the first claim for relief.

■ The mission of summary judgment is to pierce the pleadings and assess proof in order to determine whether there is a genuine need for trial. (Dressler v. MV Sandpiper, 2 Cir., 331 F.2d 130). Its function is to sift proof pro and con to determine whether there are or are not real—as distinct from paper or fictitious—issues, and it must be granted if there is no indication of genuine issue of fact. (Irving Trust Co. v.

United States, 2 Cir., 221 F.2d 303; Community of Roquefort v. William Faehndrich Inc., 2 Cir., 303 F.2d 494). A nonmoving party can be granted summary judgment if the court is satisfied it is so entitled. (6 Moore's Federal Practice, pgs. 2038-9; Local 33, International Hod Carriers Building and Common Laborers' Union v. Mason Tenders District Council, 2 Cir., 291 F.2d 496, 505).

The motion of the plaintiffs for partial summary judgment, or in the alternative for the framing of particular material issues of fact for trial is denied. Summary judgment is granted to the defendant, and a judgment hereby enters in its favor dismissing the complaint in its entirety.

It is So Ordered.